HALL and others, Appellants, v. BANKING REVIEW BOARD and others, Respondents.

*March 9—April 4, 1961.*

360

For the appellants there was a brief and oral argument by *Lester H. Gunsburg* of Milwaukee.

For the respondents Banking Review Board and G. M. Matthews, as commissioner of banks, the cause was argued by *Roy G. Tulane,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

For the respondent Whitefish Bay State Bank there was a brief and oral argument by *William J. Keating,* attorney, and *Ralph M. Hoyt* of counsel, both of Milwaukee.

FAIRCHILD, J.   The applicants, commissioner, and Banking Review Board were acting pursuant to sec. 221.01, Stats., governing the organization of a banking corporation. When an application has been made under subs. (1) and (2), sub. (3) requires the commissioner to issue a notice of hearing. Sub. (5) requires him to ascertain "at the hearing" and by other investigation a number of specified facts. Sub. (6) provides:

"After completing such investigation the commissioner shall make a written report to the banking review board

stating the results of his investigation and his recommendation. The board shall consider the matter, conducting any necessary hearing, and promptly make its decision approving or disapproving the organization of the proposed bank. Such decision shall be final except for review in court. If approval is given, the commissioner shall indorse on each of the original applications the word 'Approved' over his official signature. If disapproved, he shall indorse the word 'Disapproved' over his official signature. One of the duplicate originals shall be filed in his office and one returned by mail to the applicants."

In the event of approval, sub. (10) requires the commissioner to issue a certificate of authority.

Sec. 220.035, Stats., provides for the appointment of the Banking Review Board, specifies certain powers and duties, and contains procedural provisions. One of the board's powers is to review acts and determinations of the commissioner upon application of an aggrieved party. In exercising that power, the relationship between the functions of the board and the commissioner is different from the relationship between their functions under sec. 221.01. In the situation governed by sec. 220.035, the commissioner makes a decision, and the board affirms, modifies, or reverses it subject to some of the ordinary limitations on the scope of review. Under sec. 221.01, the commissioner recommends a particular decision, but the only decision is made by the board.

Notwithstanding the differences, it seems reasonable that the following provisions of sec. 220.035, Stats., were intended to govern the board when acting under sec. 221.01:

"(3) Any final order or determination of the banking review board shall be subject to review in the manner provided in chapter 227.

"(4) . . . The board may make reasonable rules and regulations not inconsistent with law as to the time of meetings, time of hearings, notice of hearings, and manner of

conducting same *and of deciding . the matters presented.
. . .*" (Emphasis supplied.)

The petitioners rely upon the following portion of sec. 221.01 (6), Stats.: "Such decision shall be final except for review in court." They argue essentially that the board had made its decision (which the statute says should be final) when a majority voted to approve the application, and thus had exhausted its power in the matter.

The parties have cited several decisions dealing with the power of an administrative officer or board to reopen or grant rehearing of a proceeding after decision or change an official action once taken. None of these authorities deals with facts closely similar to the facts before us. The parties seem to agree with the following statement:

"The jurisdiction of an administrative agency over its own judgments can be determined only by an interpretation of the statute which has created the agency. Irrespective of the statute, any continuing jurisdiction may be cut off by judicial review of the administrative decision. No general statement can exactly define the time when the power of continuing control is lost." [1]

In our view, the question in this case is not whether the board had continuing jurisdiction over the proceeding after a decision had once been made; rather, it is whether the vote of approval constituted a decision by the board under the circumstances.

In the matter of the other application considered at the same meeting, the board apparently adopted a written decision including findings and conclusions, and instructed the secretary to mail copies to interested persons. Although no such action was taken at the meeting with respect to the ap-

[1] 1942 Wisconsin Law Review, 5, 15, The Doctrine of *Res Judicata* in Administrative Law.

proval or disapproval of the Glendale application, a written decision of disapproval was formulated a few days later, signed, filed, and copies mailed out.

It appears to us that in the absence of a statute prescribing procedure, an administrative board must have reasonable latitude in determining how its decisions are to be formulated and announced, and that until such reasonable procedure has been completed the decision cannot be said to have been made. Where groups of people meet in order to make collective decisions, a procedure for prompt reconsideration is generally recognized.[2] Certainly a rule that a resolution does not constitute decision until the adjournment of the meeting at which it was adopted, or until it has been reduced to writing and signed within a reasonable time, would be authorized by sec. 220.035 (4), Stats., permitting the board to regulate the "manner . . . of deciding the matters presented." It is true that the board has not adopted such a rule, but in our opinion the board was within reasonable bounds in taking the position that it could reconsider the vote of approval at the same meeting and before any announcement had been made or written decision issued.

Our conclusion that the vote of approval did not achieve finality is further supported by the proposition that the law required the board's decision to be in writing, accompanied by findings of fact and conclusions of law. The board did fulfil that requirement, but not until May 4th. Until it was fulfilled, one could not be certain as to what findings the majority of the board would agree to.[3]

Sec. 227.13, Stats. 1953, required a written decision accompanied by findings of fact and conclusions of law "in a contested case." Sec. 227.01 (3), Stats. 1953, provided:

---

[2] Robert's Rules of Order, Revised (75th Ann. ed.), p. 156 ff.

[3] See *State ex rel. Ball v. McPhee* (1959), 6 Wis. (2d) 190, 201, 94 N. W. (2d) 711.

" 'Contested case' means a proceeding in which, after hearing required by law, the legal rights, duties, or privileges of any party to such proceeding are determined or directly affected by a decision or order in such proceeding and in which the assertion by one party of any such right, duty, or privilege is denied or controverted by another party to such proceeding."

Sec. 221.01 (3) and (5), Stats. 1953, required a hearing. The transcript has not been included in the record on appeal, but it appears that there was testimony in opposition to the application. It also appears that the report of the examiner employed by the state banking department was unfavorable. The Whitefish Bay State Bank opposed the application, presumably on the ground that it serves the area to be served by the new bank. Sec. 221.01 (5) prescribes a number of subjects to be investigated and considered. They include the adequacy of existing banking facilities, the need for further banking capital, the methods and banking practices, interest rates on loans, and character of service of the existing bank or banks. One of the findings of the board was: "That a better location could have been found, not in such close proximity to an existing bank, which renders satisfactory service."

The significance of the statutory definition of "contested case" is that the so-called fair-play provisions, secs. 227.07 to 227.13, Stats., inclusive, apply to contested cases. Where the definition requires interpretation, it should be construed in the light of the purpose it is to serve.

In the administrative proceeding now under consideration, the applicants were seeking the grant of a privilege. An unfavorable report of a representative of the banking department was before the board. A pertinent consideration was the adequacy of banking service in the community and a bank which was providing service in the community opposed the application.

We conclude that the proceeding was a contested case, and that sec. 227.13, Stats., applied.

The report of the examiner is not part of the record on appeal. We know only that it was termed unfavorable in the minutes of the board. It may be that this proceeding was a contested case by reason of the position taken by the examiner. It is true that the definition of "contested case" refers to a "party" controverting the right, duty, or privilege of another party, but we conclude that the term "party" does not restrict the definition to proceedings where issues are contested between private parties. The reason for the rules of fair play is at least as great where issues controlling the legal rights, duties, or privileges of a private party are actively contested by the agency or its representatives as when they are contested by another private party.

In any event this proceeding was a contested case because of the opposition to the application by the Whitefish Bay State Bank. Our attention has been called to *Lodi Telephone Co. v. Public Service Comm.* (1952), 262 Wis. 416, 55 N. W. (2d) 379, 57 N. W. (2d) 700, and *Milwaukee v. Public Service Comm.* (1960), 11 Wis. (2d) 111, 104 N. W. (2d) 167. Both cases involve the question of whether a party was sufficiently aggrieved to seek judicial review of an administrative decision under sec. 227.15, Stats. In the *Lodi Case,* the Lodi Telephone Company had appeared before the public service commission in opposition to a petition by some of its patrons for service by another telephone company. Both companies were operating within the territory under permits. It was held that Lodi Telephone Company was a "person aggrieved" by the adverse decision so as to be entitled to a review. In the *Milwaukee Case,* Milwaukee (as a water utility) had appeared before the public service commission to oppose an application by neighboring municipalities for authority to provide water-utility service. It was held that since Milwaukee had no grant, franchise, or

indeterminate permit to operate as a public utility in those municipalities, it was not a person aggrieved by the adverse determinations of the commission, and was not entitled to a judicial review.

We think that the interest of the bank in the present case in serving the area which would also be served by the Glendale Bank and in defending the adequacy of its service therein is similar to the situation of the Lodi Telephone Company rather than to that of the city of Milwaukee in the respective cases cited.

We are also aware that many types of administrative proceedings involving certificates of public convenience and necessity, rates, and the like, are of general interest and many persons appear to oppose or favor propositions in which they have only a remote financial interest. It may be that a proceeding before an administrative agency may become a contested case even though a person permitted to appear in the administrative proceeding and make a contest will not be considered to have a sufficient interest to be an aggrieved party for purposes of judicial review.

Because of the stipulation of the parties specifying the issue, we are not concerned here with whether the testimony supports the findings, nor with any other issue.

*By the Court.*—Judgment affirmed.

DIETERICH, J., took no part.