FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF LINCOLN, A UNITED STATES CORPORATION, APPELLANT, V. DEPARTMENT OF BANKING OF THE STATE OF NEBRASKA ET AL., APPELLEES.

192 N. W. 2d 736

Filed December 17, 1971. No. 37932.

John W. Delehant, John E. Dean, and Robert J. Huck, for appellant.

Ralph H. Gillan, for appellee Department of Banking.

James J. Fitzgerald, Jr., Lyle E. Strom, and Douglas W. Reno, for appellee Commercial Sav. & Loan Assn.

Heard before SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

First Federal Savings and Loan Association, a federally chartered corporation, brought this action against the Department of Banking and Commercial Savings and Loan Association, a Nebraska chartered corporation. The action sought to enjoin the enforcement of an order issued by the Department of Banking allowing Commercial to establish a branch office in Omaha, Nebraska; to declare the order invalid and of no effect; and to require the Department of Banking to establish procedural rules and regulations governing the establishment of a branch office by a state chartered savings and loan association. The trial court found that the statutes of Nebraska neither prohibit nor require either notice or hearing for the establishment of savings and loan branch offices and that the Administrative Procedures Act did not apply. The district court denied the request for injunction and dismissed plaintiff's petition. First Federal has appealed.

Both savings and loan associations involved here were operating in Omaha, Nebraska, in 1968. In that year, each association began to consider a new branch location in northwest Omaha. On December 19, 1968, First Federal passed a resolution to build a branch office. On January 16, 1969, Commercial passed a resolution for its new branch facility. First Federal, following adoption of its resolution, made application to the Federal Home Loan Bank Board for approval of a branch at 90th and Maple Streets in Omaha. Notice of its ap-

plication was published on January 30, 1969, as required by law. Letters of notice were also sent to savings and loan associations in the area and to the Department of Banking. Commercial received notice by January 30, 1969, and the Department of Banking received written notice on January 28, 1969.

On February 10, 1969, Commercial requested a meeting with the Director of the Department of Banking and met with him on February 17, 1969. On February 18, 1969, without notice or hearing, the Department of Banking issued an order approving the application of Commercial for the establishment of a branch office at 90th and Maple Streets in Omaha.

Commercial completed the purchase of land at the location on March 21, 1969, and on the same date notified the Federal Home Loan Bank Board of its expansion. Commercial also informed the Federal Home Loan Bank Board that it would protest the application of First Federal. The Federal Home Loan Bank Board denied First Federal's application on August 13, 1969. On September 25, 1969, First Federal filed this action. Commercial's branch office was completed on January 9, 1970. The Federal Home Loan Bank Board, on April 7, 1970, reversed its former decision and granted permission for First Federal to locate its branch at 90th and Maple also. Both branches have now been completed and are in operation.

One other fact situation needs chronological reference. On February 1, 1962, the Director of the Department of Banking notified all state chartered savings and loan associations that it was the opinion of the department that the statutory criteria which applied to the initial approval of the establishment of savings and loan associations applied to the establishing of branches as well. That notice required that immediately thereafter applications for a branch office must be submitted to the Director of the Department of Banking for approval. On August 1, 1962, a statement of policy relating to applica-

tions for certificates of approval to organize savings and loan associations and for authority to establish branch offices was issued by the Department of Banking over the signature of the Director. It contained a paragraph stating: "As directed by a letter dated February 1, 1962, no building and loan association shall establish a branch office without prior approval from the Department of Banking. It is required that an application upon a form to be supplied by the department shall be filed with said department. After the filing of such application the Director of Banking will give due notice for a public hearing to be held at the place which he designates to hear all evidence in favor of the establishment of such branch and all evidence by those opposing the establishment of such branch office." The evidence is very indefinite as to how fully or for what periods of time the statement of policy was adhered to. In a letter to the Federal Home Loan Bank Board dated March 13, 1969, the deputy director of the Department of Banking stated that as to the establishment of branch offices, the statement of policy was "hereby rescinded."

It is the position of Commercial that a state chartered savings and loan association is not required to obtain permission from the Department of Banking before opening a branch office; that even if it were, First Federal has no standing to challenge the approval order; and that notice and hearing is not a statutory or constitutional requirement.

The statutes of Nebraska do not expressly prohibit nor require the approval of the Department of Banking before establishing a branch office by state chartered savings and loan associations. The Department of Banking by statute has general supervision and control over all savings and loan associations which are declared to be quasi-public in nature and subject to regulation and control by the State. See, §§ 8-102, R. R. S. 1943, and 8-301, R. R. S. 1943.

Section 8-331, R. R. S. 1943, specifically provides for

the issuance of a certificate of approval upon the initial establishment of a state chartered savings and loan association before it shall transact any business. Among other things, that section provides that no such certificate of approval shall be issued unless and until the Department of Banking shall have determined: "* * * (3) That in its judgment a need exists for such an institution in the community to be served; (4) That there is a reasonable probability of its usefulness and success; and (5) That the same can be established without undue injury to properly conducted existing local building and loan associations."

The issues here require an analysis of the legislative intent and purpose in adopting the statutes dealing with the quasi-public business of savings and loan associations. Section 8-331, R. R. S. 1943, clearly establishes that the function of the Department of Banking in determining whether or not a state chartered savings and loan association shall be issued a certificate of approval to transact business initially is clearly a quasi-judicial determination. The standards set in that statute require a determination of the public interest. The standards not only place emphasis on the locality in which the association is to be established, but specifically require a finding that initial establishment be done without undue injury to properly conducted existing local savings and loan associations. If the legislative purpose in regulating, supervising, and controlling the operation of savings and loan associations was to protect the public and guard against economically destructive competition between savings and loan associations in a given area, that purpose could be frustrated and the effectiveness of the legislation destroyed if existing institutions could open branch offices at any places they desired without the approval of anyone.

We hold that a reasonable interpretation of section 8-331, R. R. S. 1943, and other statutes dealing with regulation and control of savings and loan associations neces-

sarily implies the power of the Department of Banking to approve or disapprove the establishment and operation of branch offices of savings and loan associations chartered and operating under the laws of this State. We also hold that legislative standards for the granting of an application for initial establishment of a savings and loan association operation under section 8-331, R. R. S. 1943, also apply to an application to establish a branch office. The holding here is fully supported by the reasoning and policy considerations set forth in Southwestern Savings & Loan Assn. of Houston v. Falkner, 160 Tex. 417, 331 S. W. 2d 917 (1960).

Commercial insists that the statute does not expressly require approval before opening a branch office and therefore no such approval is necessary. At least two Directors of the Department of Banking obviously felt that the department had authority to require such approval or to waive it. Commercial had itself applied for such approval in at least one instance prior to the current one. It is illogical to assume that the Legislature intended to regulate and control the establishment of savings and loan associations but did not intend to extend that control over the establishment of branches. Neither is there any indication the Legislature intended the Department of Banking should have the right to exercise or not to exercise control over the establishment of branches without any standards limiting its discretion. We hold that approval by the Department of Banking is necessary before a savings and loan association, chartered and operating under the laws of Nebraska, may establish a branch office.

Commercial contends that First Federal is simply a competitor and has no interest sufficient to give it standing to question the order entered here. It is necessary to show that a party is in danger of sustaining a direct injury as a result of action and it is not sufficient that one has merely a general interest common to all members of the public. See Ex Parte Levitt, 302 U. S. 633,

58 S. Ct. 1, 82 L. Ed. 493. There should be little question that First Federal has standing to challenge the order entered here. If a competing savings and loan association does not have standing to challenge the validity of an administrative decision favorable to the applicant, such an order would almost never be subject to challenge, nor could anyone raise the issue of whether statutes were being complied with or not. See Elizabeth Federal Savings & Loan Assn. v. Howell, 24 N. J. 488, 132 A. 2d 779.

We note that section 8-331, R. R. S. 1943, dealing with the initial establishment of savings and loan associations does not require any notice or hearing. It is apparent that statutes which grant quasi-judicial powers to an administrative agency but fail to provide for notice of hearing to those whose interests would necessarily be affected by the exercise of that power may be unconstitutional. It is also apparent that the provisions of the Administrative Procedures Act, sections 84-901, R. R. S. 1943, et seq., may breathe constitutionality into an otherwise deficient statute provided the provisions of that act are complied with. The provisions of section 8-331, R. R. S. 1943, make it clear that existing local savings and loan associations have interests and rights which are affected by the establishment of other local savings and loan associations or branches sufficient to make all such associations "interested parties" entitled to constitutional due process. See, also, § 84-901 (3), R. R. S. 1943. Due process of law requires notice and an opportunity to be heard, as a matter of right and not by the let or leave of administrative officers or agencies, when the rights, duties, or privileges of interested parties are involved by an exercise of quasi-judicial power pursuant to the terms of a statute. School Dist. No. 8 v. State Board of Education, 176 Neb. 722, 127 N. W. 2d 458. See, also, Allen v. Omaha Transit Co., Inc., *ante* p. 156, 187 N. W. 2d 760.

The final issue remaining for determination is whether

or not constitutional due process requires that the Department of Banking be directed to establish procedural rules and regulations, including provisions for reasonable notice and hearing and governing the establishment of a branch office by a state chartered savings and loan association. The provisions of the statutes dealing with the regulation and control of savings and loan associations and the provisions of the Administrative Procedures Act may properly be considered in para materia in determining whether or not due process of law has been afforded. Compliance with the mandatory provisions of section 84-913, R. R. S. 1943, requiring an administrative agency to adopt appropriate rules of procedure for notice and hearing is necessary to give validity to its action when notice and hearing are essential to due process. School Dist. No. 8 v. State Board of Education, *supra*.

The order of the Department of Banking of the State of Nebraska of February 18, 1969, was invalid. The Department of Banking should be required to establish procedural rules and regulations governing the establishment of branch offices by a state chartered savings and loan association in accordance with the provisions of the Administrative Procedures Act and in accord with this opinion. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED WITH DIRECTIONS.