VALLEY STATE BANK OF CANTON, et al., Appellants

v.

FARMERS STATE BANK OF CANTON, Respondent

(213 N.W.2d 459)

(File Nos. 11238-11244. Opinion filed December 20, 1973)

616

M. T. Woods, Woods, Fuller, Shultz & Smith, Sioux Falls, for appellant, Valley State Bank of Canton.

Michael J. McGreevy, Asst. Atty. Gen., Pierre, for appellant, South Dakota State Banking Commission; Kermit A. Sande, Atty. Gen., on the brief.

Samuel W. Masten, Canton, for respondent, Farmers State Bank of Canton.

HALL, Circuit Judge.

On September 13, 1971, a "Notice of Intention to Organize and to File Articles of Incorporation with the State Banking Commission, for a State Bank under Chapter 51-17 SDCL" was filed with the State Banking Commission on behalf of appellant Valley State Bank of Canton, seeking a charter to open a banking service in Canton, South Dakota.

Pursuant thereto, the Banking Commission caused a "Notice of Hearing" to be published in the legal newspaper of Lincoln County, South Dakota, and notified banks in the vicinity of

Canton including the respondent Farmers State Bank of Canton, the sole bank in Canton, of a hearing on the application of the Valley State Bank for a state chartered bank at Canton, South Dakota.

On December 21, 1971, the Banking Commission held an adversary, adjudicative-type hearing to take testimony on appellant's application. Both appellant and respondent banks were allowed to present witnesses and conduct cross-examination. At the conclusion of the testimony, the respondent and appellant banks presented their proposed findings of fact and conclusions of law as required by the Banking Commission.

The Banking Commission subsequently issued its "FINDINGS OF FACT, CONCLUSIONS OF LAW, RULING ON PROPOSED FINDINGS, AND DECISION", which showed a unanimous approval of appellant Valley State Bank of Canton's application. Copies of the findings, conclusions, ruling and decision were transmitted by letter to the attorneys of record.

The record in this case reflects that the Banking Commission at all times strictly adhered to its own rules and SDCL 1-26-1 through 1-26-40, the Administrative Procedure Act (hereinafter referred to as APA), in regard to notice, conduction of hearings and rulings. The rules of procedure utilized by the Banking Commission were specifically adopted June 30, 1971, in compliance with the APA. The Banking Commission followed its rules as to a "contested case" and, at the time of the hearings, none of the parties objected to these procedures.

The Banking Commission's ruling of February 23, 1972, granted a charter to appellant Valley State Bank of Canton to operate a bank in Canton, and respondent Farmers State Bank of Canton filed a "Petition For Review In Circuit Court" in Lincoln County on March 17, 1972.

On the review granted by the Circuit Court, the Farmers State Bank of Canton basically contended: The Banking Commission was bound by the APA; the application of appellant for a charter involved a " 'Contested case' " within the meaning of

SDCL 1-26-1(2); the respondent was a proper party to appeal under the APA; the appeal was timely; and, the Banking Commission's approval of a charter for appellant bank was not based upon "substantial evidence" as defined by the APA and, therefore, clearly erroneous.

The appellants' resistance to the review by the Circuit Court was based on allegations that: The Banking Commission's action was not reviewable by the court because it involved a purely legislative function; the respondent was not a proper party to seek review; the Banking Commission was in no way controlled by the APA; the appeal was not timely; and, there was "substantial evidence" to support the Banking Commission's approval of the charter.

The Circuit Court, relying on the contentions of the respondent Farmers State Bank of Canton, set forth above, reversed the Banking Commission's approval of the charter for the Valley State Bank of Canton, thus framing the questions presented on this appeal.

The activities of granting or revoking bank charters are legislative functions which have been delegated to the Banking Commission. SDCL 51-16, 51-17. The enabling legislation effective at the time of the application of appellant Valley State Bank of Canton, however, in part provided:

> "The commission shall have the power to adopt all necessary rules and regulations not inconsistent with the laws of this state, for the management and administration of banks * * * over which it has jurisdiction * * * and to regulate its own procedure and practice, which *rules* shall be promulgated *pursuant to chapter 1-26.*" (emphasis added) SDCL 51-16-14; and

> "The commission shall pass upon every application to organize a bank under the laws of this state * * * and the action of the commission on every such application shall be final, *subject to* chapter 1-26 * * *." (emphasis added) SDCL 51-16-15.

■ Because of these provisions in our statutes, the Banking Commission is not free to perform its functions in total disregard of the APA. The Banking Commission's rules of procedure must be adopted pursuant to the APA and, once adopted, acquire the force and effect of law. Public Utilities Commission of California v. United States, 1958, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470; Paul v. United States, 1963, 371 U.S. 245, 255, 83 S.Ct. 426, 9 L.Ed.2d 292; Springborg v. Wilson and Company, 1955, 245 Minn. 489, 73 N.W.2d 433; Verbeten v. Huettl, 1948, 253 Wis. 510, 34 N.W.2d 803; Davis, Administrative Law Text, 126, 127 (3rd Ed. 1972).

The Banking Commission rules 30 and 31, adopted June 30, 1971, have the force and effect of law in the present case. These rules bind the Banking Commission as well as those coming before it. Pursuant to the command of the legislature (SDCL 51-16-14 and 51-16-15), the Commission adopted the above-cited rules to govern the process of granting new bank charters in " 'Contested case[s]' ". Following these rules, the Banking Commission caused notice to be issued to competitive financial institutions which may be thereby affected. The rules followed established an adjudicative, adversary hearing prior to the Banking Commission's ruling. In this quasi-judicial setting, proposed findings of fact and conclusions of law were required to be presented by the appellant and respondent banks, named as parties of record in the action.

The Banking Commission's final decision and rulings were based upon the above adjudicative procedure, but it is now argued that the Commission was not required to follow such procedure and the rules followed did not bind the Commission in any manner. It is then concluded that the proscriptions and results of the Commission's own rules, and those of the legislature, may be avoided because the Commission operates under delegated legislative authority.

It is illogical to say that the competing respondent bank has an interest of such importance it should be presented at a quasi-judicial, adjudicative hearing but that there was no possibility the respondent bank could be adversely affected or

aggrieved by the decision and, thus, not entitled to appeal. Such incongruous reasoning spawns arbitrary and capricious governmental activity.

■■■ The Banking Commission is not excluded from the provisions of the APA. SDCL 1-26-1(1). It cannot be contended that the issuance of a bank charter does not fall within the definition of " 'License' " as found in the APA. SDCL 1-26-1(3). Having been made a party of record, privy to an adjudicative hearing in which it was required to defend its interest against the appellant bank which was seeking a charter, the respondent became a " 'Party' " within the meaning of SDCL 1-26-1(5) and the Banking Commission's rules 30 and 31. The phrase "required by law," found in SDCL 1-26-1(2), which establishes when the " 'Contested case' " hearing is necessary, includes constitutional requirements of fair play, due process and *agency rules,* as well as the requirements of statutory law. It must then be concluded that this was a " 'Contested case' " because the Banking Commission, by its own procedure establishing the rules which required the adjudicative hearing, sought to determine some of the "legal rights, duties, or privileges of a party" herein, the respondent Farmers State Bank of Canton. SDCL 1-26-1(2). See First Federal Savings & Loan Association v. Department of Banking, 1971, 187 Neb. 562, 192 N.W.2d 736, which adopted this reasoning; see also, Bryan v. Community State Bank of Bloomington, 1969, 285 Minn. 226, 172 N.W.2d 771; Hall v. Banking Review Board, 1961, 13 Wis.2d 359, 108 N.W.2d 543, adopting similar reasoning that the APA applies to granting bank charters contested by established banks and presents a " 'Contested case' " which the APA controls. The respondent, being a party to a " 'Contested case' ", within the meaning of our statutes, and by Banking Commission rules entitled to its hearing, was thus entirely proper in presenting its appeal before the circuit court.

■■■ The cases previous in time to the APA no longer control when and how administrative decisions are reviewed by the courts. Newport National Bank v. Providence Institution for Savings, 1967, 101 R.I. 614, 226 A.2d 137. When the Administrative Procedure Act was passed, it did not codify existing administrative law but rather adopted its own substantive and

procedural rules which must be adhered to. The APA which applied under legislative enactment (SDCL 51-16-14 and 51-16-15) and which the Banking Commission felt was applicable, as revealed in the exactness with which it was followed, must be carried out to its fullest extent. It cannot be fragmented. Selective or arbitrary utilization of only a portion of its features, chosen on an indiscriminate basis by the agency, such as was apparently attempted here, is unacceptable. First Federal Savings & Loan Association v. Department of Banking, 1971, 187 Neb. 562, 192 N.W.2d 736.

■ Assuming, as appellants contend, that the legislature had not expressly controlled the Banking Commission with the APA and that the Banking Commission was not affected by its rules which ultimately established an adjudicatory contested-case hearing in the bank charter action, it is inconceivable that a competing bank could not be held to be an "interested person" who could be "aggrieved" by an adverse ruling allowing an additional banking facility in its area, within the meaning of SDCL 1-26-30. Thus, appeal would still be allowed. The statute on banking, SDCL 51-17-15, requires a "particular" determination of the adequacies of "existing bank * * * facilities" in the community and the "volume of bank transactions" in the area. The Banking Commission is specifically directed to act in the interest of "preserving the liquid position of banks; and preventing injurious credit expansions and contractions." SDCL 51-16-39. These are elements which indicate that the legislature meant to protect the "interests" of existing banks and, more importantly, the banking public from a collapse of the state's financial structure. A competing bank may be "aggrieved" if these factors are disregarded. It may even be destroyed.

We have said that banking is affected with a "public interest". Wall v. Fenner, 1956, 76 S.D. 252, 76 N.W.2d 722. This decision is still appropriate in its view that banking stability is a matter which concerns not only directors, stockholders and depositors of a bank, but also concerns every member of the community. Too many banks can be a source of financial weakness. Wall v. Fenner, supra. The establishment of an

additional bank at the location in dispute may substantially prejudice existing banking facilities. The results could be devastating to an area.

Competing banking institutions are the only ones having sufficient interest, in harmony with the general public concern for the protection of savings and investments, to bring to the attention of our courts errors the Banking Commission has made in chartering an additional bank in a manner contrary to the legislative standards.

■ The result of these factors is commanding. The competitive banking institutions are "interested persons" who may be "aggrieved" by the Banking Commission's decision and thus able to appeal under SDCL 1-26-30. This is so, regardless of whether or not specifically named a party, as the respondent was in this case, or whether a hearing is by law required as reflected in SDCL 1-26-1(2). See First Federal Savings & Loan Association v. Department of Banking, 1971, 187 Neb. 562, 192 N.W.2d 736; Conestoga National Bank of Lancaster v. Patterson, 1971, 442 Pa. 289, 275 A.2d 6; Bryan v. Community State Bank of Bloomington, 1969, 285 Minn. 226, 172 N.W.2d 771; Hall v. Banking Review Board, 1961, 13 Wis.2d 359, 108 N.W.2d 543, in all of which the courts ruled the APA did apply to bank agencies, and allowed competing banks the status of "aggrieved persons" so as to be able to appeal the granting of a new charter under the APA. See also, Note, South Dakota's Administrative Procedure Act and the Bank Charter Application—Is it a "Contested Case"? 17 S.D.Law Rev. 394 (1972).

■ The time for appealing the decision of the Banking Commission was properly computed on the basis of SDCL 1-26-31 by the respondent. Neither SDCL 21-33-3 nor 1-26-31 is exclusive of the other. One may appeal administrative action under either statute in the appropriate circumstances. Elk Point Independent School District No. 3 v. State Commission on Elementary and Secondary Education, 1971, 85 S.D. 600, 187 N.W.2d 666, which allowed an appeal under SDCL 1-26-1 through 1-26-40, even though no appeal was specifically allowed

under the agency statute. These two statutes are now to be considered mutually, with any conflict being resolved in favor of the APA. SDCL 21-33-1 and 21-33-1.1.

The appellants place reliance upon the case of Camp v. Pitts, 1973, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106. Herein the United States Supreme Court ruled that the Federal Administrative Procedure Act did not make the issuance of a national bank charter a " 'Contested case' " within the meaning of the APA because the national banking law made no reference to the APA and did not require a hearing to issue additional charters. The Supreme Court was careful to point out, however, that neither the National Bank Act nor the rules of the Comptroller of Currency required a hearing. The Court did not rule that appeal could not be taken from a ruling of the comptroller under the Federal APA and carefully pointed out that such could occur. The case now before this Court is distinguishable from Camp v. Pitts, supra, because the South Dakota legislature has said South Dakota's APA does apply to the Banking Commission, and the Banking Commission adopted a rule which resulted in an adjudicative hearing which would be used only in a " 'Contested case' ". In Camp v. Pitts, supra, the National Bank Act did not make the federal APA applicable, and the Comptroller of Currency had not adopted a rule requiring a hearing, and no hearing had been held.

We are left with the question of the standard of review to be applied to administrative action and whether the trial court, in this case, abused this standard of review.

The standard a court should utilize in the review of an administrative decision is established by SDCL 1-26-36. The relevant portion of this statute, applicable at the time of this case, provided that a court may reverse the administrative agency if its findings, inferences, conclusions, or decisions are "Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record". SDCL 1-26-36.

■ To be sustained, the Banking Commission's ruling must be supported by substantial evidence. Application of Ed Phillips

& Sons Co., 1972, 86 S.D. 326, 195 N.W.2d 400. Substantial evidence is construed to be such relevant and competent evidence as a reasonable mind might accept as being sufficiently adequate to support a conclusion. McKinnon v. State Banking Commission, 1960, 78 S.D. 407, 103 N.W.2d 179, 182.

■ The courts should not substitute their determination of the weight of the evidence for that of the agency. SDCL 1-26-36. The legislature has recognized that the expertise required in some fields of legislative authority is better left to qualified administrators who have refined abilities in narrow areas, controlled only by general guidelines established by the legislature. Affiliated Distillers Brands Corp. v. Gillis, 1964, 81 S.D. 44, 130 N.W.2d 597. The administrative agency must, however, lend credence to the guidelines established in the statutes which gave rise to its existence.

■ In the present case, the legislature has established elements which *must* be considered in an application for a bank charter. SDCL 51-17-15. Among these elements are the character, financial standing, responsibility and reputation of the proposed organizers, officers and stockholders of the applicant bank. SDCL 51-17-15(1), (2) and (3). To be established are: (1) The need of the community for additional banking facilities, with particular consideration of the adequacy of existing facilities; (2) The ability of the community to support an additional bank, as determined by consideration of the competition of other institutions, history, demand for credit, and the business of the community in relation to its size and stability; and (3) Other factors bearing on the relation of the proposed bank to the community.

■ Examining the whole record of the proceeding now before this court, we find that in 1969 the Banking Commission turned down a similar application for a bank charter in Canton. Since the 1969 disapproval, the only significant economic change found in the record is that Augustana Academy, an institution with a half-million-dollar annual volume has closed and a large John Deere implement dealer has moved out of Canton. Neither is now contributing to the city's economy. In addition, there have been three extensive crop losses as the result of hail. There has

been a population decline in Canton and Lincoln County in general, except in the extreme northern region which borders Sioux Falls. A study published in December 1971, made by V. E. Montgomery of the University of South Dakota School of Business, concludes the economic picture of Canton is less than promising because of a population decline in Lincoln County, crop failures, and decline in farm earnings. Mr. Montgomery's study concludes the ·Canton area does not need and probably could not support an additional banking facility.

The appellant Valley State Bank of Canton countered this evidence with a Comprehensive Plan, which was more a prediction of what might or could happen from 1968 through 1990, rather than a study of the current economy in Canton. The appellant applicants intimated that there were people who would put their money in a new bank instead of investing it elsewhere, but failed to produce any evidence to support these claims. It was contended many people of Canton felt a new bank was necessary, but none was named nor reasons given, other than an alleged need for competition.

It thus appears that since 1969, when the prior charter application was disapproved, there has been nothing to change the economy of Canton which would now indicate Canton could support another bank. The hard facts of the V. E. Montgomery comprehensive study are not refuted by mere intimations. The legislature, in directing the factors to be covered in the investigation, intended that the ability of the community to sustain an additional bank be established by at least some evidence. SDCL 51-17-15.

There was no disagreement between the proponent and opponent that the present service produced by the respondent bank was adequate. There were no complaints, which reflected any substance, against the existing bank. Thus, the particular attention to be given to the adequacy of existing facilities, SDCL 51-17-15(4), could only arrive at one conclusion; the existing facilities totally met the needs of Canton.

■ The competition existing for the respondent Farmers State Bank of Canton is not inadequate or insignificant. Within Canton itself, there is a federal savings and loan association, which may soon be given checking account authority and a federal credit union. Within 40 miles of Canton there are no less than 29 banking institutions. Many of the citizens of Canton work and bank in Sioux Falls. It is difficult to conclude that the close proximity of such a vast number of financial institutions does not produce the competition the legislature desired. This is especially true when everyone agreed the respondent bank was an excellent facility which met everyone's needs. There was *no* evidence that existing competition was inadequate.

■ Mere intimations that money is leaving and that a service can be provided are insubstantial factors with which to fulfill the guidelines of the legislature set forth in SDCL 51-17-15. This is especially true when considered in light of the Banking Commission's refusal to grant the charter in 1969 because of the poor economic picture and the history of banking failure in Canton.

Although the Banking Commission's decision should be affirmed if supported by the evidence, there does not appear to have been any credible, substantial evidence upon which to reach a conclusion that an additional banking facility at Canton was needed, or the community able to support it. The record is devoid of any indication of the economic factors which support the need for additional banks. There is no showing of potential depositors, the volume of transactions, the business and industrial activity of the area, or growth sufficient to warrant the issuance of an additional charter.

On the record presented, the Circuit Court was correct in reversing the Banking Commission's decision to approve a bank charter for the appellant Valley State Bank of Canton, and the circuit court's ruling is hereby affirmed.

All the Justices concur.

HALL, Circuit Judge, sitting for DUNN, J., disqualified.