NORRIS FAUSS, DOING BUSINESS AS NATIONAL FOODS COMPANY, APPELLEE, v. DONNA F. MESSERLY, APPELLEE, IMPLEADED WITH GERALD E. CHIZEK, COMMISSIONER OF LABOR, APPELLANT.

263 N. W. 2d 668

Filed March 15, 1978. No. 41491.

James R. Jones and John W. Wynkoop, for appellant.

Mueting, DeLay & Spittler, for appellee Fauss.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MCCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

The Commissioner of Labor in this appeal challenges the scope of review of the District Court for Madison County, sitting in its appellate capacity.

The Commissioner contends the District Court was without jurisdiction to enter the judgment rendered.

The present controversy concerns the charging of the experience account of Norris Fauss, doing business as National Foods Company, hereinafter referred to as National, for unemployment compensation benefits paid to Donna F. Messerly. Mrs. Messerly was employed full time by National at its plant in Norfolk, Nebraska. On October 24, 1976, the company temporarily reduced the working hours of its plant employees from 40 to 32 hours per week due to some reconstruction work in the plant. On October 26, 1976, Mrs. Messerly and two other employees applied for partial unemployment benefits at the Norfolk office of the Division of Employment.

Mrs. Messerly indicated in her application she was still employed by National but was working on a part-time basis. The Form DE 350 mailed to National informing it of her claim had typed on it the notation "Partial."

Upon receiving this notice the manager of National held a discussion with the three employees. He explained they probably would not be eligible for partial unemployment benefits because their wages were not sufficiently reduced. He also advised them that if the claims were processed, National would then have to inform the insurance company through whom it contracted its profit sharing and pension plans that claimants were part-time employees. Part-time employees are not eligible for benefits under those plans. The employees told the manager they would withdraw their claims for partial unemployment benefits. Believing they intended to do so, he gave them the DE Forms 350 to be returned to the Division of Employment for that purpose.

Two of the employees did withdraw their claims. Mrs. Messerly did not. Her testimony before the Nebraska Appeals Tribunal is as follows: "Q- (By Ref. Stanek) Did you take the employer information

report (DE Form 350) back in, Mrs. Messerly?

"A- I took it — the one lady especially, said if we take it down and drop it, well everything be forgotten. Because of the manner in the way he talked to us. And I says, I didn't dearly (sic) come out and says I was gonna take it back, but when I did bring it up here and going to drop the claim, but I really hadn't made my mind up, they (Employees, Division of Employment) told me I had three alternatives up here. So when we got all done talking I said well, I'll take this form back to Fred (Frederick Kirschner, manager of National Foods) then, let him fill it out, because he probably was under the impression that I was going to bring it back, and they said no, you won't, because he had no business letting you have it in the first place. That is what they told me; so I don't figure I lied to the company.

"Q- In other words, you hadn't fully made up your mind until you came back down to the office, the area claims office?

"A- No, because he told us, think it over a couple days.

"Q- You had that information sheet in your hand; when you got down here they told you what?

"A- They gave me three alternatives of what I could do after they found out what went on out there, and I felt bad about not taking it back out to him, but they told me that I —

"Q- What were the three alternatives?

"A- That I could drop the thing altogether; or that I could file; and I don't even remember what the third one was, but they did tell me that I had a right to file.

"Q- And that you should turn that in, not take it back out to Mr. Kirschner?

"A- No, I wanted to take it back out and give it to Fred, and they said no because he shouldn't have gave it to you."

Mrs. Messerly gave the DE Form 350 to an em-

ployee of the Division of Employment, who inscribed thereon: "Employer would not provide information. Form returned via clt. 10/29/76 J.M." This obviously did not reflect the facts, and the employee "J.M." could not help but know it did not. Mrs. Messerly then provided the necessary wage information and her claim for full unemployment was approved November 2, 1976, or 7 days after the filing of her claim for partial unemployment.

The first notice the employer received that a claim had been filed for total unemployment compensation benefits was November 26, 1976, when National was informed its experience account had been charged. A protest was immediately made to a claims deputy at the Norfolk division employment office.

The claims deputy took the position National could not contest the charge against its account except to demonstrate claimant was ineligible to receive benefits because she was not available for work. He made a determination favorable to claimant on the issue of availability December 7, 1976.

On December 10, 1976, National filed a request for hearing and an appeal from that determination on a form provided by the employment office. Several reasons were listed for the appeal, including the fact the only notice given was for a claim for partial unemployment. There is no dispute National did not receive any notice of the claim for total unemployment.

The notice of hearing mailed to the parties by the employment office indicated the only issue to be considered on appeal was claimant's availability for work. Both parties appeared at the hearing unrepresented by counsel. Over objection, the hearing examiner restricted inquiry to the availability issue and the deputy's determination was affirmed.

National filed a timely petition for review in the District Court January 25, 1977. The District Court,

after a hearing on April 15, 1977, entered judgment in favor of National. The court found the employer should have received notice of the second claim and the refusal of the claims deputy and the Appeal Tribunal to consider issues other than claimant's availability for work was arbitrary, unreasonable, and capricious. It held the refusal of the administrative agency to consider whether claimant left work voluntarily without good cause did not deprive the court of jurisdiction to decide that issue. The court ordered: "1. That the claimant left work voluntarily without good cause and her claim should be and should have been processed accordingly. 2. That the experience account of the employer-appellant is not to be charged on this claim. 3. That on the issue of 'availability for work' the Appeals Referee was correct, and in that context only the same is affirmed. 4. That costs should be taxed to the Commissioner-Appellee." The Commissioner appeals from this judgment.

Benefits are paid from the Unemployment Compensation Fund, which consists of money collected from employers and money credited to the State's account in the federal Unemployment Trust Fund. An employer's rate of contribution to the fund is dependent upon the amount of benefits paid to its former employees. § 48-649, R. S. Supp., 1976. For each employer a separate experience account is established for crediting contributions and charging benefits. Benefits are charged only against the accounts of base period employers, in inverse chronological order. An employer is not charged with benefits paid to its employees who have left work voluntarily without good cause or who have been discharged for misconduct. § 48-652, R. R. S. 1943.

An individual applying for benefits is required to appear in person at a state employment office and complete a claim form. Benefit Regulation No. 15 requires the Division of Employment to notify all

base period employers of the claim and to request wage and separation information on Form DE 350. The employers have 7 days in which to complete and return the form. A claims deputy then makes the initial determination upon the claim. Subsequent determinations are made for each week in which benefits are claimed. In this instance the employer did not receive the required notice.

Under the regulations promulgated by the Commissioner, the initial determination by the claims deputy controls whether an employer's experience account will be charged. Section 48-652 (3) (a), R. R. S. 1943, provides for noncharging of benefits because of a "voluntary quit" or discharge for misconduct only if "the employer has filed timely notice of the facts on which such exemption is claimed in accordance with regulations prescribed by the commissioner." Regulation 16 provides in part: "No charge shall be made to an employer's experience account for benefits paid to any individual who has left work voluntarily without good cause or has been discharged for misconduct connected with his work if so found by a deputy, and if the information as required by Benefit Regulation No. 15 as to wages and separation under such disqualifying conditions is received in writing at the office which mailed the Form DE-350 within seven days from the date it was mailed to the employer." Where, as here, no notice is given on the claim, the employer has no opportunity to bring the facts to the attention of the agency.

The determination of the deputy is the final decision on the claim unless an appeal is taken to the Appeal Tribunal within 10 days after the mailing of notice of the determination or, in the absence of such mailing, within 7 days after delivery of the notice. § 48-630, R. R. S. 1943. The right to appeal is conferred upon the "claimant or any other party entitled to notice of a determination." § 48-634, R. R. S. 1943.

The Commissioner points out that section 48-634, R. R. S. 1943, only confers the right of appeal upon the "claimant or any other party entitled to notice of a determination as herein provided." Section 48-632, R. R. S. 1943, only requires that notice be given to an employer "who has indicated prior to the determination, in such manner as required by regulation of the commissioner, that such individual may be ineligible or disqualified * * *." The Commissioner argues National did not provide disqualifying information in advance of the determination of November 2, 1976; therefore, it was not entitled to notice and it could not appeal that determination. The employer could appeal the determination of December 7, 1976, but that determination was limited to the issue of availability for work. Thus, the Commissioner argues, if the employer wishes to raise the issue of lack of notice it must do so by means of collateral attack and not by direct appeal.

The flaw in this argument is that the determination of December 7, 1976, also included a finding that the employer had received notice of the claim and had failed to provide disqualifying information. Upon receiving notification that its account had been charged, National was required to seek a redetermination or else be bound by the charge. § 48-651, R. R. S. 1943. National complied with the statute by promptly filing a protest with the claims deputy on November 26, 1976. The adverse decision of the claims deputy was properly appealed to the Appeal Tribunal, but that body refused to consider whether the deputy was correct in his assessment of the notice issue. Benefit Regulation No. 8 (3) (a) specifically provides: "All issues relevant to the appeal before an appeal tribunal shall be considered and passed upon." The refusal to consider the issue was a proper subject for appeal. The District Court was correct in finding the Appeal Tribunal erred by not addressing the issue.

We completely agree with the determination of the District Court that the employer was entitled to notice of the filing of the claim for total unemployment on October 29, 1976. The notice mailed to the employer on October 26, 1976, clearly indicated that only a claim for partial unemployment had been filed. Prior to October 29, 1976, National could not have supplied any separation information for non-charging of benefits because claimant was still in its employ. Further, the unemployment office prevented the employee from returning the claim form to the employer to be completed.

Benefit Regulation No. 15 provides: "(1) When an individual files a new claim for benefits, the Division of Employment *shall* notify all base period employers thereof; and request wage and separation information on Form DE 350, * * *." (Emphasis supplied.) Although claimant did not complete a new claim form on October 29, 1976, when she changed her claim from partial to total unemployment, this was the equivalent of filing a new claim and the agency was required to notify the employer. Any other interpretation of the regulation would be contrary to the intent of the statutory scheme. See California Dept. of Human Resources Development v. Java, 402 U. S.. 121, 91 S. Ct. 1347, 28 L. Ed. 2d 666 (1971).

Moreover, the failure to provide the employer with the opportunity to present disqualifying information at any stage of the administrative proceedings constitutes an arbitrary, capricious, and unreasonable process. There is no possible justification or excuse for the procedure followed by the agency herein. We stated in First Fed. Sav. & Loan Assn. v. Department of Banking, 187 Neb. 562, 192 N. W. 2d 736 (1971): "Due process of law requires notice and an opportunity to be heard, as a matter of right and not by the let or leave of administrative officers or agencies, when the rights, duties, or privileges of inter-

ested parties are involved by an exercise of quasi-judicial power pursuant to the terms of a statute.''

The Commissioner contends the only issue which could be considered in the District Court was claimant's availability for work. There was no question on claimant's availability for work. She was fully able to do so. The question was whether she quit available work without cause and whether notice was given to National of her claim for full unemployment benefits.

The Commissioner argues the failure of the agency to consider those issues deprives the District Court of jurisdiction to do so. We do not agree. The agency, by arbitrary, capricious, and unreasonable refusal to consider pertinent issues, cannot deprive the District Court of jurisdiction to do so.

Section 48-638, R. R. S. 1943, provides the method for an appeal to the District Court from a decision of an Appeal Tribunal. It requires the service of the petition on the Commissioner. The procedure on appeal is set out in section 48-639, R. R. S. 1943, and is as follows: ''In any judicial proceeding under sections 48-638 to 48-640 the court shall consider the matter de novo upon the record. The court may on its own motion order additional evidence to be taken before it. In addition, any party to such review may offer additional evidence before the court, provided that such party shall have served written notice of such offer on the other parties at least ten days prior to the hearing thereof. Such notice shall set out the nature of the evidence which he so desires to offer and the names of the witnesses whom he intends to call. In such event the other parties may without advance notice offer evidence in rebuttal. Such proceedings shall be heard in a summary manner and shall be given precedence over all other civil cases except arising under the workmen's compensation law of this state.''

Pursuant to the appeal procedure, a copy of the

petition for review in the District Court was personally served on the Commissioner. Additionally, National complied with the statute by serving notice of intention to offer additional evidence in support of the allegations made in its petition for review. It further specified the names of the witnesses to be called by it to sustain its allegations.

In its petition for review, National prayed for relief as follows: (1) Finding that claimant voluntarily quit employment with appellant without good cause to do so; (2) finding that no request for wage information regarding claimant's new claim for full benefits was ever made upon appellant by the Division of Employment; (3) finding that claimant grossly misrepresented to the Division of Employment the alleged fact that the DE Form 350 delivered by her to said division was the Commissioner's response to a request for wage information concerning a new claim, and per section 48-628 (b), R. R. S. 1943, finding that claimant should be disqualified from receipt of any benefits.

On the last point, the question to be determined, so far as National is concerned, is not whether the claimant should be disqualified from receipt of any benefits, but rather whether the experience account of the employer should be charged with benefits paid to her which is the relief granted by the District Court.

The District Court found: (1) Claimant left work voluntarily without good cause and her claim should be and should have been processed accordingly; (2) the experience account of the employer should not have been charged on the claim; (3) the employee was available for work and in that context only the order of the appeals referee was affirmed. All costs were taxed to the Commissioner.

This is a case where arbitrary and unreasonable action of employees of the Division of Employment prevented the employer from raising any defenses

to the action of that agency. To restrict the hearing to the sole question as to whether the claimant was available for work was to emphasize the obvious. No one ever disputed the fact that the claimant was able to work, and so was available to do so. By ignoring the clear language of the statute, the employees of the agency have put the employer to a considerable expense. To argue that the District Court has no jurisdiction to grant the remedy, because the agency refuses to recognize it, aborts the requirements of due process.

Section 48-639, R. R. S. 1943, in addition to providing for a de novo review, provides a procedure for adducing additional evidence in the District Court. National fully complied with the statute to adduce this evidence on the issues the hearing deputy and the Appeal Tribunal refused to consider. The evidence adduced is fairly conclusive on the issues decided by the District Court. To require the employer to incur the additional expense of again presenting those issues to the same individuals who arbitrarily refused to consider them in the first instance, although repeatedly importuned to do so, would make a mockery of justice. This is not a situation where the agency merely made a wrong decision. It is instead one where the agency refused to even consider the issues raised so it could make a decision.

On the facts adduced in this case, we determine the District Court properly exercised its jurisdiction and affirm the judgment entered by it.

The judgment is affirmed.

AFFIRMED.