MEIERHENRY, Justice
(concurring specially).
[¶ 24.] I agree with the majority to affirm the Commission because of our standard of review and the weight we give to the Commission’s determinations. The statute requires that we “give great weight to the findings made and inferences drawn by an agency on questions of fact.” SDCL 1-26-36. Here, the intervenor challenges the Commission’s findings as to “need in the community” and “ability of the community to support the proposed bank.” Majority opinion, ¶ 12. In order to reverse, we have to conclude that the Commission’s findings on those factors were “clearly erroneous in light of the entire evidence in the record.” SDCL 1-26-36(5). Interestingly, the legislature’s 2008 amended version of the statute no longer includes the two factors at issue here.
[¶ 25.] Most of the evidence before the Commission involved facts not in dispute, such as population data, business and housing growth, character, reputation and financial standing of the stockholder and directors of applicant bank, customers currently served in the area, and other economic indicators. The expert witnesses disagreed concerning the two challenged factors — need and community’s ability to support another bank. As to those factors, the Commission accepted the opinion of one expert over the other and entered the following finding:
Intervenor’s expert ... was a less credible witness on the subjects of need, competitiveness of the current banking environment, and the ability of the community to support the Applicant than was Applicant’s expert witness.
*854 The wording of the finding suggests that the applicant’s expert was more convincing and his testimony given more weight than the intervenor’s expert.
[¶ 26.] The record does not display an overwhelming case for another bank in the Pierre/Ft. Pierre community. The dissent clearly points out how minimal the evidence of economic and population growth in the area was. The projected growth reflected an optimism that may or may not be realized. Based on the evidence, this is a very close case. Had the evidence projected the subsequent economic downturn, one wonders if the Commission would have made the same decision. However, we can only review the evidence and data as it existed at the time and as presented to the Commission.
[¶ 27.] The role of the courts is not merely to rubber stamp a Commission’s decision. However, neither can we retry the case and substitute our judgment. We have to rely on the expertise of the members of the Commission, who are supposedly chosen for their business acumen and knowledge of community banking needs.
[¶ 28.] The lack of population growth certainly gives pause. Nevertheless, I cannot agree that this Court should tell the Commission which factors take precedent or should be given more weight over other factors. The legislature established the factors the Commission is to consider. Population is not cited in the statute as a factor. Here it was presented in relationship to the community need factor. Likewise, there was no evidence in the record of an industry standard for population to bank ratio. The evidence showed that some communities in South Dakota had smaller population to bank ratios than the contemplated ratio in this case. For example, the evidence shows that the communities of Arlington, Bowdle, Castlewood, Harrisburg, Highmore, Murdo, Onida, and Viborg each have two banks that serve fewer than 500 people per bank. In light of the evidence, the Commission’s findings on need and community ability to support the bank are not clearly erroneous and the Commission’s decision should be affirmed.
SABERS, Retired Justice (dissenting).
[¶ 29.] The majority opinion concludes that the Commission’s factual findings regarding sections (3) and (4) of SDCL 51A-3-9[3] are not clearly erroneous. I disagree. In light of all the evidence in the record, I am left with a definite and firm conviction that a mistake has been committed. See Indep. Trust Co., LLC v. S.D. State Banking Comm’n, 2005 SD 52, ¶ 5, 696 N.W.2d 539, 541. Therefore, I dissent.
[¶ 30.] Specifically, SDCL 51A-3-9(3) requires the Commission to investigate and make a report concerning the “need in the community” for the proposed bank, and SDCL 51A-3-9(4) requires the same regarding the “ability of the community to support the proposed bank.” In pertinent part, the Commission made the following findings:
XXII.
There is currently a need in the community in and around Fort Pierre, South Dakota for Applicant’s proposed main office bank. A need in the community exists to better serve the banking needs of Applicant’s existing customers in the Fort Pierre/Pierre area, and to serve the existing and future banking needs of residents of the Fort Pierre/Pierre area. The Fort Pierre/Pierre area is regarded *855 as a single banking market for the purposes of this Application.
[[Image here]]
XXV.
There is substantial credible evidence that the area in and around Fort Pierre/ Pierre has the ability to support the proposed relocation of Applicant’s main banking office and charter, giving consideration to the competition offered by existing banks, the banking history of the community and opportunities for profitable employment of bank funds.
[¶ 31.] A review of the hearing transcript reveals, however, that these findings are clearly erroneous in light of the evidence presented. Our case law instructs that there must be some indication in the record of the economic factors supporting the need for and the ability to support additional banks including a showing of “potential depositors, the volume of transactions, the business and industrial activity of the area, or growth sufficient to warrant the issuance of an additional charter.” Valley State Bank of Canton v. Farmers State Bank of Canton, 87 S.D. 614, 627, 213 N.W.2d 459, 467 (S.D.1973). When analyzing the need of and the ability to support an additional bank, population trend is undoubtedly an important concept to consider in determining whether an application should be granted. Common sense dictates that in order for a bank to be successful and secure, it needs customers.
[¶ 32.] Dakota Prairie Bank filed an application in 1998 to establish a branch bank in Fort Pierre. This application was withdrawn after the Commission heard evidence and the parties submitted post-hearing briefs, but before the Commission rendered its decision. Again in 1999, Dakota Prairie filed applications to move its charter to Fort Pierre and to establish a branch bank where its charter existed. The Commission denied the applications upon determining that there was no need for, nor could the Fort Pierre community support, an additional bank.
[¶ 33.] Dakota Prairie’s application at issue in this case was filed in 2007. The evidence established that in 2000, the population of Fort Pierre was 1,991. At the close of 2006, the population was 2,067.[4] Therefore, Fort Pierre’s population increased a mere 10.86 people per year from 2000 to 2006. Additionally, during the same time period, Stanley County’s population slowly increased from 2,772 to 2,815, or for a total of 43 people, which computes to an increase of only 6.14 people per year. More unsettling, however, is that several Dakota Prairie witnesses conceded that the South Dakota Economic Development projected a decrease in Fort Pierre’s population in 2010, predicting that it would be lower than the municipality’s population in 2000. Such stagnant growth from 2000 to 2006 and a projected population decrease for 2010 can hardly be said to support findings of “need in the community” and “ability of the community to support” the proposed bank.[5]
*856 [¶ 34.] The Commission, the circuit court, and ultimately the majority opinion place significant weight on the fact that substantial sums of money were invested into the economic, infrastructure, and housing development in Fort Pierre. However, we cannot turn a blind eye to the critical admissions made by Dakota Prairie’s witnesses, including (1) there currently were vacant stores and stops on Main Street in Fort Pierre; (2) a gas station in Fort Pierre had recently closed; (3) roughly half of the homeowners of the new homes in Fort Pierre were already residents of Pierre or Fort Pierre, rather than newcomers to the area; (4) despite the new homes being built, total school enrollment in Fort Pierre remained steady; (5) from 1996 to 2006, there was, on average, only one new job per month in the entire Stanley County; (6) certain branch banks in Pierre (i.e., U.S. Bank, Home Federal Savings Bank, Dakota State Bank, Wells Fargo Bank, American State Bank) experienced no or insignificant growth in deposits from 2002 to 2006; (7) Dakota State Bank branched into Pierre in 2002 with approximately $2 million in preexisting deposits; five years later, its deposits had grown by only $2 million; yet, Dakota Prairie projected that its deposits would increase from $1.2 million to $11 million within three years of establishment; (8) Dakota Prairie would not provide any services not already provided by the competition in Pierre and Fort Pierre; and (9) approximately only 3% of the total deposits in the Pierre/Fort Pierre market were held in Fort Pierre. There was also testimony that the drought beginning in 2002 negatively impacted area farming and ranching operations, which in turn affected banking practices. All of these facts demonstrate the clearly erroneous nature of the Commission’s findings that there is need for and the ability to support an additional bank in Fort Pierre.
[¶ 35.] The instant situation is similar to the facts presented in Valley State Bank of Canton, 87 S.D. 614, 213 N.W.2d 459, where the circuit court reversed the Commission’s approval of the bank’s application. In affirming the circuit court on appeal, this Court detailed several factors apparently overlooked by the Commission, including the closure of two businesses in Canton; three extensive crop failures; and a population decline in Canton and Lincoln County in general, except in the extreme northern region which borders Sioux Falls.[6] Id. at 625-26, 213 N.W.2d at 466. Undeniably, the standard of review utilized in Valley State Bank of Canton is different from the clearly erroneous standard we must abide by now; however, this higher standard does not mean this Court is required to rubber stamp the Banking Commission’s decisions. Furthermore, Valley State Bank of Canton persuasively demon *857 strates that the factors weighing against a bank application being approved, such as stagnant or declining population, cannot be blatantly ignored. In light of Fort Pierre experiencing similar misfortunes as Canton had, the Commission’s findings of a need in the community and the ability to support an additional bank are clearly erroneous. Dakota Prairie’s application should be similarly denied.
[¶ 36.] We cannot simply ignore the black and white reality of the stagnant population growth in Fort Pierre.[7] To do so, is, in effect, perhaps setting this bank up for failure. Since Dakota Prairie’s previous application, there has not been sufficient change in the economy of Fort Pierre to warrant the establishment of an additional banking institution. The Commission’s findings that there was a need for and the ability to support an additional bank are clearly erroneous. For these reasons, I dissent.
[¶ 37.] GILBERTSON, Chief Justice, joins this dissent.

. This statute was amended in 2008. It is undisputed that the previous version of the statute applies to this case. Any reference to the statute throughout this dissent is in reference to the older version.

. Although there is some dispute in the record as to Fort Pierre’s population in 2006, we rely on the more generous statistic.

. Undeniably, Pierre is right across the Missouri River and its downtown area is within driving minutes of Fort Pierre. That alone should not justify granting Dakota Prairie’s application, especially in light of the fact that a new branch bank was recently established in Pierre. From 2000 to 2006, Hughes County's population increased by 483 citizens. However, in 2002, Dakota State Bank's application to establish a branch bank in Pierre was granted to satisfy any resulting banking needs of the community.
Furthermore, SDCL 51A-3-9 provides that the director of the Commission shall investigate various factors regarding "the com *856 munity.” Read literally that means "the community," under the facts before us, is Fort Pierre and does not include Pierre. Not only does the majority opinion expand the definition of "community” to include Pierre, but it throws in the entire Hughes County for good measure. See supra ¶ 17.

. The majority opinion submits that the dissent's reliance on Valley State Bank of Canton is misplaced because, at the time it was decided, an older version of the applicable statute was in force. The majority opinion points out that the current version of the statute does not include the following language: "giving particular consideration to the adequacy of existing bank and trust facilities in the community.” While this is true, the majority opinion fails to recognize that the factors detailed above (i.e., business closures, crop failures, and population decline) directly relate to the Commission’s determinations of whether there was a need for and the ability of the community to support an additional bank. These determinations are still required under the statutes applicable to this case. See SDCL 51 A — 3—9(3); SDCL 51A-3-9(4).

. In her special concurrence, Justice Meier-henry notes that certain communities have smaller population-to-bank ratios than what currently exists in Fort Pierre. See Special Concurrence, ¶ 5. That fact, however, is irrelevant. The Commission cannot, or at least should not, approve an application for an additional bank in Fort Pierre based on the number of banks in other communities, which apparently have the need for and the ability to support such banks. Instead, the Commission’s determinations should only be based on evidence relating to, in pertinent part, Fort Pierre's need for and ability to support an additional bank.