2001 SD 35

**In the Matter of the Application of DORSEY & WHITNEY TRUST COMPANY LLC for Organization Certificate Authorizing a Trust Company to Transact Business at 300 North Dakota Avenue, Sioux Falls, South Dakota.**

**Nos. 21623, 21624.**

Supreme Court of South Dakota.

Argued Jan. 9, 2001.

Decided March 14, 2001.

---

Mark Barnett, Attorney General, Diane Best, Assistant Attorney General, Pierre, SD, Attorneys for appellee South Dakota Banking Commission.

George N. Manolis, Douglas Kludt of Churchill, Manolis, Freeman, Kludt & Shelton, Huron, SD, Edward J. Pluimer, Minneapolis, MN, Attorneys for appellee Dorsey & Whitney Trust Company.

Jeremiah D. Murphy, Thomas J. Welk of Boyce, Murphy, McDowell & Greenfield Sioux Falls, SD, Attorneys for appellant.

MILLER, Chief Justice.

[¶ 1.] This is an appeal from a circuit court affirmance of the South Dakota Banking Commission's grant of an application to organize and operate a trust company in Sioux Falls, South Dakota. We affirm.

## FACTS

[¶ 2.] Dorsey, Whitney, L.L.P., a major law firm in Minneapolis, Minnesota, applied to establish a trust company in South Dakota. First National Bank of Sioux Falls, Rushmore Bank and Trust (Rushmore) and Citicorp Trust South Dakota (Citicorp) objected to Dorsey's application. First National and Citicorp obtained permission to participate in the administrative proceeding. Citicorp, however, did not participate and has not appealed.

[¶ 3.] The Commission held a contested case hearing at which several witnesses for each party testified and were available for cross-examination. The Commission, by a vote of three to two, approved Dorsey's application. First National appealed to the circuit court which affirmed.

## DECISION

[¶ 4.] **1. The circuit court correctly applied the clearly erroneous standard.**

[¶ 5.] The parties dispute the appropriate standard of review. First National contends the circuit court's clearly erroneous review was error. We dis-

cussed the confusing nature of SDCL 1–26–36, which guides an appellate court's choice of standard of review for an administrative agency decision, in *Permann v. Department of Labor*, 411 N.W.2d 113, 115–17 (S.D.1987). In *Permann*, we held that, although our case law and the statute had created confusion over the years, common sense dictates that we review findings of fact under the clearly erroneous standard and questions of law under the de novo standard. *Id.* at 117 (noting the agency's superior position to decide factual questions and an appellate court's superior position to decide legal questions). Additionally, *Permann* recognized that often review of an administrative agency decision involves mixed questions of law and fact. *Id.* at 118. When presented with a mixed question, courts apply the clearly erroneous standard if the "analysis is essentially factual, and thus is better decided by the agency or lower court ...," and the de novo standard when the "resolution requires consideration of underlying principles behind a rule of law...." *Rios v. Department of Soc. Servs.*, 420 N.W.2d 757, 759 (S.D.1988).

[¶ 6.] This appeal involves a mixed question of law and fact because " 'the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether ... the rule of law as applied to the established facts is or is not [favorably satisfied].' " *Permann*, 411 N.W.2d at 118 (citing *Pullman–Standard v. Swint*, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66, 80 n. 19 (1982)). Where the analysis turns on the fact finder's " 'experience with the mainsprings of human conduct,' " it is essentially a factual question to which we apply the clearly erroneous standard. *Id.* at 119 (citing *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.1984). If, however, "the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles ...," we apply the de novo standard. *Id.* Con-

sidering the factual nature of the inquiry made by the Commission and the factual nature of the arguments in the briefs, we determine this mixed question is essentially factual in nature. *See Rios*, 420 N.W.2d at 759–60 (applying the clearly erroneous standard where the matter turned on the determination of whether statutory requirements were satisfied). Accordingly, the clearly erroneous standard is appropriate, meaning this Court will not reverse unless "we are definitely and firmly convinced a mistake has been made." *Id.* at 759 (citing *Dakota Harvestore v. South Dakota Dep't of Revenue*, 331 N.W.2d 828, 830 (S.D.1983)).

[¶ 7.] **2. The agency's decision is not clearly erroneous in light of the entire record.**

[¶ 8.] First National contends that the Commission's findings fail to satisfy SDCL 1–26–25, which requires agencies to provide concise and explicit statements of underlying facts to support findings which are couched in statutory language. First National also argues that Dorsey failed to favorably satisfy the four factors contained in SDCL 51A–6A–5, which provides:

Upon the filing of an application with the commission, the director shall make a careful examination and investigation concerning the following conditions:

(1) The financial standing, general business experience, and character of the organizers and incorporators;

(2) The character, qualifications, and experience of the officers of the proposed trust company;

(3) The public need for the proposed trust company in the community where the trust company has proposed to locate and whether existing banks or trust companies are meeting the need; and

(4) The prospects for success of the proposed trust company.

If the commission determines any of these conditions unfavorable to the applicants, the application shall be disap-

proved, but if not, then the application shall be approved.

At oral argument, both parties contended that the "public need" criterion in SDCL 51A–6A–5 was pivotal in this case. As this is our first occasion to examine this statute, and since the statute does not define the term, we must look to South Dakota's banking application case law for guidance.

[¶ 9.] Our legislature purposefully gave the South Dakota Banking Commission a great deal of discretion in deciding factual questions because the commissioners are individuals with specialized knowledge of the banking and trust industries whose judgment and insight in these specialized fields facilitate the admittance and overall regulation of these industries. *Valley State Bank v. Farmers State Bank*, 87 S.D. 614, 625, 213 N.W.2d 459, 465 (1973) (citing *Affiliated Distillers Brands Corp. v. Gillis*, 81 S.D. 44, 48, 130 N.W.2d 597, 599 (1964)); *see Wall v. Fenner*, 76 S.D. 252, 256, 76 N.W.2d 722, 724 (1956). It would be impractical for the legislature to attempt to perform the functions it delegated to the commission. *Wall*, 76 S.D. at 256, 76 N.W.2d at 724. The commission's discretion, however, is not absolute. *Id.* It must base its actions on factual determinations limited to the factors enumerated in the statute. *Id.*

[¶ 10.] We have previously stated, "[t]he overriding purpose of our banking laws is the protection and security of a bank's depositors and creditors." *Application of American State Bank*, 254 N.W.2d 151, 153 (S.D.1977). Similarly, the legislature intended to protect the participants in the trust industry by ensuring the "creation and maintenance of adequate and sound [trust] facilities and services." *Wall*, 76 S.D. at 258, 76 N.W.2d at 725. Although this Court has never addressed the "public need" factor in the trust industry context, we have addressed the similar phrase "public convenience and necessity" in the banking context.

[¶ 11.] In *Application of American State Bank*, we stated in connection with public necessity, that " '[t]he banking laws are regulatory in nature, enacted for the protection of the public and are in no way designed to give exclusive benefits to institutions which have been granted a license to conduct the business of banking.' " 254 N.W.2d at 153. We further stated in that context, " '[w]hile the adequacy of existing facilities must be considered, the mere fact that existing facilities are adequate does not mean that justification for another bank may not exist.' " *Id.* Given the similar aim and nature of the legislation governing banking and trusts, the principles expressed in our banking application case law apply with equal force, where appropriate, in the trust company creation context.

[¶ 12.] The Commission entered twelve findings of fact and nine conclusions of law. Findings of Fact V, VII and VIII are couched in the language of SDCL 51A–6A–5. The remaining Findings lend support to V, VII and VIII by providing concise and explicit statements of underlying facts. (Initially, State Banking Director Richard Duncan examined the application by verifying the numbers contained therein.) While the Commission's findings may be minimal, they are adequate under SDCL 1–26–25 and are supported in the record.

[¶ 13.] As stated above, the parties contend the public need criterion is the main point of contention. Findings of Fact VI, VIII, IX and X relate to that factor and state:

VI. The owners and organizers of the Applicant have had a long standing fiduciary relationship with the grantors and beneficiaries of the trusts that Applicant anticipates handling as trustee, these grantors and beneficiaries desire to continue this long term fiduciary relationship with Applicant for their trust needs and no existing trust company can meet these desired needs.

VIII. There exists a public need for the proposed Trust Company in the

Sioux Falls community where the Applicant has proposed to locate which can not be met by banks or existing trust companies because of the long standing individual fiduciary relationships of the owners and organizers of the Applicant.

IX. The owners and organizers of the Applicant intend to formalize their present individual trust relationships with their clients and make available to their clients the benefits of the favorable laws of the State of South Dakota.

X. The Applicant does not intend to solicit business in South Dakota, it intends to serve existing trust relationships of the owners and organizers of the Applicant and those clients who request the services of the Applicant.

Dorsey produced one witness, a partner in the firm, to testify on behalf of the firm at the hearing. When questioned about the public need factor, he testified that Dorsey had long term relationships with its clients in the trust context. He further testified that other partners involved with trusts indicated in an informal survey that their clients would be interested in using a Dorsey trust company located in and offering the advantages of South Dakota law.

■■■ [¶ 14.] First National argues that Dorsey construes the term "community" contained in the public need factor too broadly. We disagree. SDCL 51A–6A–3, which is in the trust company creation chapter, purposefully enlarged the definition of community stating in pertinent part, "community shall be broadly construed and shall include geographic or market based parameters, or both." Given the legislature's mandate to construe "community" broadly and the inclusion of market based parameters, we cannot say we are definitely and firmly convinced the commission erred. The Commission accepted Dorsey's argument that they will be filling a public need via a specialized market, namely current trust clients who wish to enjoy the benefits of South Dakota law and continue the long-term relationship with Dorsey. The record supports the Commission's decision.

■■■ [¶ 15.] First National points out that Dorsey will occupy a double fiduciary duty to its clients. It calls on this Court to decide if we want to permit double fiduciary duties in South Dakota as a matter of public policy. Although First National points out the double fiduciary position Dorsey will occupy, they do little to indicate what problems this might cause. Obviously, there is potential for peril when a person occupies two separate duties calling for the utmost care, but Dorsey testified they understood the position they would occupy and are preparing disclosure documents to inform their clients of any potential problems. This fulfils Dorsey's duty to its client, and a majority * on the Commission did not see a problem under the facts of this application with Dorsey's resolution to make appropriate disclosures to its clients. No error is shown.

[¶ 16.] Dorsey had the burden to prove by a preponderance of the evidence that they satisfied the four factors. Although the evidence is admittedly slim, especially as to public need, the Commission in proper exercise of its discretion accepted it as satisfying the four factors. Additionally, the testimony largely showed that First National was concerned with future competition by Dorsey and was objecting to Dorsey's application to protect their competitive interest. Direct and cross-examination occurred and the Commission considered that testimony along with the documentary evidence in making its determination. We are not definitely and firmly convinced, in view of the entire record, that the Commission erred in finding Dorsey favorably satisfied the four factors in SDCL 51A–6A–5. First National, as ap-

---

* Two commissioners dissented to granting Dorsey a license. These dissenters, however, did not detail their reasons for dissenting either on the record or in writing. This makes meaningful appellate review difficult. In the future, we suggest the Commission create a more developed record to assist in our review on appeal.

pellant, has failed to show that it has suffered the prejudice of any substantial rights as required under SDCL 1–26–36 to justify the reversal for which it prays.

[¶ 17.] **3. The circuit court's refusal to take judicial notice of Director Duncan's affidavit was not an abuse of discretion .**

[¶ 18.] Dorsey attempted to have the circuit court take judicial notice of an affidavit prepared by Director Duncan. Dorsey argues that the circuit court erred in refusing to take judicial notice of the affidavit because the information it contained was readily verifiable in the public record. The affidavit discussed the trust company applications decided prior to Dorsey's.

[¶ 19.] SDCL 19–10 deals exclusively with judicial notice of adjudicative facts. SDCL 19–10–1; *Nase v. Christensen,* 409 N.W.2d 131, 132 (S.D.1987). SDCL 19–10 closely tracks Federal Rule of Evidence 201. *Nase,* 409 N.W.2d at 132. Adjudicative facts are those which relate to the immediate parties involved— the who, what, when, where and why as between the parties. FedREvid 201 advisory committee's notes. They are the facts to which the law is applied. *Id.* Director Duncan's affidavit was not before the Commission and the subject matter of his affidavit dealt mostly with the history of trust company applications over the last four years, not with First National or Dorsey. Dorsey has not shown that the circuit court erred in refusing to judicially notice the affidavit. No abuse of discretion is shown.

[¶ 20.] Affirmed.

[¶ 21.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.