2005 SD 52

**INDEPENDENT TRUST COMPANY, LLC, Appellant,**

v.

**SOUTH DAKOTA STATE BANKING COMMISSION, Department of Commerce and Regulation, Division of Banking, Appellees,**

and

**Security National Bank, Intervenor and Appellee.**

No. 23357.

Supreme Court of South Dakota.

Argued Feb. 17, 2005.

Decided April 27, 2005.

Charles M. Thompson of May, Adam, Gerdes & Thompson, Pierre, South Dakota, Attorneys for appellant Independent Trust Company.

Roberto A. Lange of Davenport, Evans, Hurwitz & Smith, Sioux Falls, South Dakota Attorneys for intervenor and appellee Security National Bank.

TIEDE, Circuit Judge.

[¶ 1.] Independent Trust Company, LLC (ITC) appeals the South Dakota Banking Commission's (Commission) denial of its application to organize and operate a trust company in Dakota Dunes, South Dakota. We affirm.

### FACTS AND PROCEDURE

[¶ 2.] ITC is a limited liability company organized by five partners of an accounting firm, King, Reinsch, Prosser, & Co., LLP (KRP), and Christian Holman (Holman), an attorney employed by KRP Financial Services. ITC filed an application with the South Dakota Division of Banking to form a trust company in Dakota Dunes, South Dakota under SDCL ch 51A–6A.

Security National Bank (Security) intervened in opposition to the application.

[¶ 3.] The Director of Banking issued a memorandum to the Commission regarding his examination and investigation pursuant to SDCL 51A–6A–5. A contested hearing was held before the Commission on October 9, 2003. Several witnesses for both ITC and Security testified and were cross-examined. The Commission received post-hearing briefs from both ITC and Security. The Commission denied ITC's application on January 9, 2004. ITC appealed to the circuit court and the court held a hearing on July 21, 2004. Following the arguments of counsel, the court affirmed the Commission's decision. ITC appeals.

## ISSUE

[¶ 4.] **Whether the circuit court erred in affirming the Commission's denial of ITC's application to operate a trust company.**

## STANDARD OF REVIEW

[¶ 5.] In deciding whether to grant an application, the Commission is bound by the Administrative Procedure Act, SDCL ch 1–26. Application of American State Bank, 254 N.W.2d 151, 152 (S.D. 1977) (citation omitted); SDCL 51A–6A–4. The Commission's findings of fact are reviewed under the clearly erroneous standard. Application of Dorsey & Whitney Trust Co., 2001 SD 35, ¶ 5, 623 N.W.2d 468, 471 (citing Permann v. Dept. of Labor, 411 N.W.2d 113, 115–17 (S.D.1987)). Questions of law are reviewed de novo. Id. "When presented with a mixed question, courts apply the clearly erroneous standard if the 'analysis is essentially factual, and thus is better decided by the agency or lower court ...,' and the de novo standard when the 'resolution requires consideration of underlying princi-

ples behind a rule of law....'" Dorsey & Whitney, 2001 SD 35, ¶ 5, 623 N.W.2d at 471 (quoting Rios v. Dept. of Soc. Servs., 420 N.W.2d 757, 759 (S.D.1988)). "Where the analysis turns on the fact finder's 'experience with the mainsprings of human conduct,' it is essentially a factual question to which we apply the clearly erroneous standard." Dorsey & Whitney, 2001 SD 35, ¶ 6, 623 N.W.2d at 471 (quoting Permann, 411 N.W.2d at 119 (other citations omitted)). "Considering the factual nature of the inquiry made by the Commission and the factual nature of the arguments in the briefs, we determine this mixed question is essentially factual in nature." Dorsey & Whitney, 2001 SD 35, ¶ 6, 623 N.W.2d at 471. "Accordingly, the clearly erroneous standard is appropriate, meaning this Court will not reverse unless 'we are definitely and firmly convinced a mistake has been made.'" Id. (citations omitted).

## ANALYSIS AND DECISION

[¶ 6.] ITC had the burden of proving by a preponderance of the evidence that it satisfied the four conditions contained in SDCL 51A–6A–5, which provides:

Upon the filing of an application with the commission, the director shall make a careful examination and investigation concerning the following conditions:

(1) The financial standing, general business experience, and character of the organizers and incorporators;

(2) The character, qualifications, and experience of the officers of the proposed trust company;

(3) The public need for the proposed trust company in the community where the trust company has proposed to locate and whether existing banks or trust companies are meeting the need; and

(4) The prospects for success of the proposed trust company.

If the commission determines any of these conditions unfavorable to the applicants, the application shall be disapproved, but if not, then the application shall be approved.

 [¶ 7.] While the Banking Director indicated in his memorandum that the conditions of SDCL 51A–6A–5 were satisfied, the Commission, not the Director, is statutorily charged with the final authority to determine whether the conditions have been met.[1] There was information presented at the hearing that was not known to the Director when he reviewed the application. "Our legislature purposefully gave the South Dakota Banking Commission a great deal of discretion in deciding factual questions because the commissioners are individuals with specialized knowledge of the banking and trust industries whose judgment and insight in these specialized fields facilitate the admittance and overall regulation of these industries." *Dorsey & Whitney,* 2001 SD 35 at ¶ 9, 623 N.W.2d at 472 (citing *Valley State Bank v. Farmers State Bank,* 87 S.D. 614, 625, 213 N.W.2d 459, 465 (1973) (other citations omitted)). This does not mean that the Commission's discretion is absolute. *Dorsey & Whitney,* 2001 SD 35 at ¶ 9, 623 N.W.2d at 472 (citing *Wall v. Fenner,* 76 S.D. 252, 256, 76 N.W.2d 722, 724 (1956)). "It must base its actions on factual determinations limited to the factors enumerated in the statute." *Id.*

[¶ 8.] The Commission found that ITC failed to satisfy any of the four conditions of SDCL 51A–6A–5. In its brief, ITC cites to the evidence that it believes supports findings contrary to those reached by the Commission. However, the question is not whether there is any evidence to support contrary findings, but whether the Commission's findings are clearly erroneous.

(1) The financial standing, general business experience, and character of the organizers and incorporators

 [¶ 9.] The Commission concluded that ITC failed to prove by a preponderance of the evidence that its organizers have adequate financial standing, business experience, and character to operate a

---

1. SDCL 51A–6A–4 provides:

*No trust company may be incorporated or organized under the laws of this state or transact trust company business in this state until the application for its incorporation or organization and application for authority to do business has been submitted to and approved by the commission. The commission shall approve or disapprove the establishment of any trust company and the location of its principal office.* The commission shall prescribe the form for making an application, and any application made to the commission shall contain such information as it requires. The commission may not approve any application until the director first investigates and examines the application and the applicants. All proceedings before the commission on any application shall be held in conformance with chapter 1–26.

If upon the dissolution or insolvency of any trust company it is the opinion of the director that by reason of the loss of services in the community, an emergency exists which may result in serious inconvenience or losses to customers or it is in the public interest of the community, the director may accept and approve an application for incorporation or organization and an application for authority to do business, subject to confirmation and subsequent approval by the commission. Upon approval of an application for authority to do business of a successor trust company, the director shall call a special meeting of the commission, and submit the application to the commission for its confirmation and approval. (emphasis added).

trust company. The Commission found in Finding of Fact No. 2 that ITC's application included "very sketchy financial information and projections of losses in the first two years of operation." The testimony at the hearing revealed that the organizers did not prepare a written business plan. Holman testified that the original investors "basically did it verbally talking out the idea." The Commission found in Finding of Fact No. 2:

> The application and testimony at the hearing revealed significant problems with ITC's business plan and financial standing.... ITC's income projections assume that it could charge fees at or above the top end of the market. ITC did not establish how it can charge more than its competition, and yet attract the volume of trust business that it projected or achieve the fast growth that it projected. The income projections of ITC appear to be unrealistic. On the expense side, ITC underestimated its expenses and overlooked several large expense items, including investment fees to Smith Barney, the omission of employee benefits and employer share of Social Security, outsourcing of a variety of services, tax return preparation, custody and safekeeping, and South Dakota's minimum tax on trust companies.

[¶ 10.] The Commission further found that "Applicant's financial information and testimony calls into question the solvency of ITC and the minimum capital into year 3, 4, and 5 of the business plan." SDCL 51A–6A–19 requires that "[t]he minimum capital of a trust company shall be two hundred thousand dollars." The testimony was that ITC's initial capitalization would be $360,000. However, based on the Commission's findings on the unreliability of ITC's profit and loss projections, ITC could drop below the $200,000 capital threshold quickly. No financial statements for the organizers were submitted.

The Commission found that ITC had not submitted proof of the organizers' actual financial standing and that there had only been cursory testimony on the subject of the organizers' financial standing. Holman testified generally that the organizers were willing to invest additional capital in the event that ITC did not operate profitably within the time projected. When questioned further he did not substantiate to the Commission the availability of additional funds or how much additional capital the organizers were willing to invest.

[¶ 11.] ITC seeks to place the blame on the Commission by arguing that the Commission failed to request additional information regarding the organizers' financial standing, business experience or character. While the Commission may have the authority to request additional information, it is not obligated to do so. ITC's arguments suggest that an applicant can submit an inadequate application and expect the Commission to request the information needed to satisfy the conditions of SDCL 51A–6A–5. However, it was ITC that had the burden of proving by a preponderance of the evidence that it satisfied the statutory conditions. Reviewing the record in its entirety, the Commission's findings as to the financial standing, business experience, and character of the organizers are not clearly erroneous.

(2) The character, qualifications, and experience of the officers of the proposed trust company

[¶ 12.] ITC's application identified Holman as the President and Managing Director of ITC, as well as the trust officer. The remaining organizers were identified as the other officers. The Commission found that ITC failed to prove by a preponderance of the evidence that its officers had the requisite character, qualifica-

tions, and experience to operate a trust company. The Commission found in Finding of Fact No. 3:

The organizers[2] of ITC lack familiarity with compliance, supervision, or operational requirements of a trust department. The application and financial projections in the application reflect the inexperience of the organizers in operating a trust company. ITC lacks any security program, which is a critical component of a trust business. ITC did not show the requisite qualifications and experience of the officers of the proposed trust company.

[¶ 13.] Holman was the only officer with any experience working for a trust company. Holman worked for approximately 4 1/2 years with Wells Fargo Bank in Iowa. However, Holman testified that he had no management responsibilities while at Wells Fargo. Holman was an attorney licensed in California, but was not licensed in South Dakota where ITC intended to operate a trust company. The Commission's findings as to this condition are not clearly erroneous.

(3) The public need for the proposed trust company in the community where the trust company has proposed to locate and whether existing banks or trust companies are meeting the need

██ [¶ 14.] The Commission found that ITC failed to prove by a preponderance of the evidence the public need for the proposed trust company. The Commission found that there were three active businesses in Dakota Dunes offering trust services and that the trust business was competitive in the southeastern South Dakota area. Unlike in *Dorsey & Whitney* where the law firm had existing long term relationships in the trust context with its proposed clients and would be serving a specialized market, the Commission found in Finding of Fact No 4 that "ITC does not have a longstanding fiduciary relationship with any grantors or beneficiaries, but rather ITC intends to solicit business generally in South Dakota."

[¶ 15.] There was conflicting expert testimony regarding the need for a trust company in the Dakota Dunes area. According to the application submitted by ITC, there were twelve institutions with trust powers located in the four South Dakota counties included in the proposed trust company service area. Eleven of those institutions were exercising those trust powers. There were thirty-three institutions with trust powers in the four Iowa counties included in the proposed service area and twenty-four of those institutions were exercising those trust powers. No witnesses testified as to any dissatisfaction with those existing trust businesses. ITC did offer affidavits from investors and other business persons in the area indicating that there was a need for an additional trust company. However, those affiants were not present at the hearing for cross-examination and there was testimony that many of the affiants were under the mistaken belief that there was only one option for trust services in southeastern South Dakota.

[¶ 16.] Reviewing the record as a whole, the Commission's findings as to this condition are not clearly erroneous.

(4) The prospects for success of the proposed trust company

██ [¶ 17.] The Commission found that ITC had not shown its prospects for success by a preponderance of the evi-

---

2. In this case, the organizers and the officers were the same individuals. Therefore, the Commission's findings as to the organizers are applicable to a discussion of the officers.

dence. "We have previously stated, '[t]he overriding purpose of our banking laws is the protection and security of a bank's depositors and creditors.'" *Dorsey & Whitney*, 2001 SD 35 at ¶ 10, 623 N.W.2d at 472 (quoting *Application of American State Bank*, 254 N.W.2d at 153) (alteration in original). "Similarly, the legislature intended to protect the participants in the trust industry by ensuring the 'creation and maintenance of adequate and sound [trust] facilities and services.'" *Dorsey & Whitney*, 2001 SD 35 at ¶ 10, 623 N.W.2d at 472 (citation omitted) (alteration in original). The Commission concluded that "[t]he safety and soundness of the trust industry would not be served by approval of the application of ITC." Based on the above analysis of the Commission's findings and a review of the record, the Commission's findings have not been shown to be clearly erroneous.

## CONCLUSION

[¶ 18.] As stated by the trial court, this is a fact-driven case. There was conflicting evidence offered at the hearing before the Commission. It is clear from reviewing the record that the members of the Commission actively participated in the hearing by considering the evidence presented and asking questions of the witnesses. While ITC asserts that it was unfairly misled as to the need to provide the organizer's financial statements, the Commission found that ITC had not satisfied any of the four statutory conditions. ITC's reliance on the Banking Director's Memorandum is misplaced because it is the Commission, not the Director, who has final authority to approve an application. As stated above, the legislature purposely gave the Commission great discretion in deciding factual questions because of the specialized knowledge possessed by the members of the Commission. *Dorsey & Whitney*, 2001 SD 35 at ¶ 9, 623 N.W.2d at

472 (citations omitted). The Commission based its decision on the application of its factual findings to the statutory conditions enumerated in SDCL 51A–6A–5. ITC has not shown that those findings are clearly erroneous. This Court will only reverse if it is "'definitely and firmly convinced that a mistake has been made.'" *Id* at ¶ 6, 623 N.W.2d at 471 (citation omitted).

[¶ 19.] Therefore, we affirm.

[¶ 20.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP and MEIERHENRY, Justices, concur.

[¶ 21.] TIEDE, Circuit Judge for ZINTER, Justice, disqualified.