#24911-a-TUCKER, Circuit Judge
**2009 SD 58**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

FIRST NATIONAL BANK
OF FT. PIERRE,                                          Intervenor and Appellant,

      v.

SOUTH DAKOTA STATE BANKING
COMMISSION, DEPARTMENT OF
COMMERCE AND REGULATION,
DIVISION OF BANKING, AND
DAKOTA PRAIRIE BANK,                          Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JAMES W. ANDERSON
Judge
\* \* \* \*

BRAD A. SINCLAIR
Serkland Law Firm
Fargo, North Dakota

FRANK FARRAR                                   Attorneys for intervenor
Britton, South Dakota                            and appellant.

GERALD P. LAUGHLIN
JOHN S. ZEILINGER
Baird Holm LLP
Omaha, Nebraska

THOMAS E. LEE of
Schmidt, Schroyer, Moreno, Lee
 & Bachand, PC                                    Attorneys for appellee
Pierre, South Dakota                            Dakota Prairie Bank.

\* \* \* \*

ARGUED:  JANUARY 13, 2009

OPINION FILED  7/15/09

#24911

TUCKER, Circuit Judge

[¶1.] The South Dakota State Banking Commission, Department of Revenue and Regulation, Division of Banking (Commission) approved an application by Dakota Prairie Bank (Dakota Prairie) to relocate its main office to Ft. Pierre, South Dakota. The circuit court affirmed the Commission's decision. First National Bank of Ft. Pierre (First National) appeals. We affirm.

## FACTS AND PROCEDURE

[¶2.] Dakota Prairie is a South Dakota state chartered bank with its current place of business located in Presho, South Dakota and a branch bank in Draper, South Dakota. First National is a national bank with its current place of business in Ft. Pierre, South Dakota and has numerous branch banks in South Dakota.

[¶3.] Dakota Prairie applied to relocate its main office from Presho, South Dakota to Ft. Pierre, South Dakota to better serve its current customers in the Ft. Pierre area and to attract new business. Notice of a public hearing on the application was published. First National intervened and objected to Dakota Prairie's application.

[¶4.] The Commission is an administrative agency, under the direction and supervision of the Department of Revenue and Regulation, whose duties include reviewing, investigating and approving or disapproving applications to establish banks. *See* SDCL 51A-2-2 and SDCL 51A-3-9 through SDCL 51A-3-10. The Commission conducted a contested hearing in accordance with SDCL ch 1-26, heard lay and expert testimony, and received other evidence from both Dakota Prairie and First National.

[¶5.]        The Director's investigation report to the Commission was introduced. The report concluded, among other things, that the proposed relocation would expand the banking services available to other area residents and would provide the opportunity for additional economic development in the Ft. Pierre community.

[¶6.]        The Commission found that Dakota Prairie established a genuine intent to relocate its main office to Ft. Pierre and to convert its existing Presho office to a branch bank.  Since Dakota Prairie had approximately $1.2 million in 114 deposit accounts and $1.6 million in loans to 36 customers in the Ft. Pierre/Pierre area, the relocation of the main office to Ft. Pierre would allow Dakota Prairie to better satisfy the needs of its existing customers in that area by providing a more convenient location.  The primary service area for Dakota Prairie would be Ft. Pierre and Stanley County, and the secondary service area would be Pierre and Hughes County.

[¶7.]        The Commission also found that there had been substantial economic development in the Ft. Pierre area since 1999.  The City of Ft. Pierre has invested approximately $2 million per year on infrastructure improvements including expansion of the sewage lagoons, flood-proofing lift stations, implementing a backup generation station, and rehabilitating the wells and distribution system. Additionally, the property in the north area of Ft. Pierre is currently a more favorable location for residential development and construction than property in Pierre, which is evidenced by several new residential real estate developments in the north area of Ft. Pierre.

[¶8.]    The Commission also found that there was a need in the community in and around Ft. Pierre for Dakota Prairie's proposed main office bank. The Commission relied on testimony from Dakota Prairie's expert, Dean Coddington, who found that the communities of Ft. Pierre and Pierre had the ability to support the proposed relocation. The banking environment in the primary and secondary service areas has grown steadily. The deposits in the primary and secondary service areas have increased from $298 million in 1999 to $495 million in 2006, which is an average gain of $28.1 million per year. Coddington projected that Dakota Prairie would reach a deposit level of $11 million in the primary and secondary service areas by the third year of operation.

[¶9.]    The Commission concluded that Dakota Prairie had met the criteria established by SDCL 51A-3-9 by a preponderance of the evidence and voted 4-0 to approve Dakota Prairie's application. The circuit court affirmed that decision. First National appeals, raising three issues:

> Whether substantial rights of First National have been prejudiced because of the administrative findings, inferences, conclusions, or decisions.
>
> Whether the Commission's actions were arbitrary, capricious, and an abuse of discretion.
>
> Whether the Commission abused its discretion by approving the application of Dakota Prairie.

## STANDARD OF REVIEW

[¶10.]    The standard of review of an administrative decision is governed by SDCL 1-26-36:

> The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact.

-3-

The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

    (1)     In violation of constitutional or statutory provisions;

    (2)     In excess of the statutory authority of the agency;

    (3)     Made upon unlawful procedure;

    (4)     Affected by other error of law;

    (5)     Clearly erroneous in light of the entire evidence in the record; or

    (6)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

A court shall enter its own findings of fact and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment. The circuit court may award costs in the amount and manner specified in chapter 15-17.

"'When a circuit court has reviewed an administrative agency's decision, we review the agency's decision unaided by any presumption that the circuit court's decision was correct.'" Meligan v. Dept. of Rev. and Reg., 2006 SD 26, ¶ 13, 712 NW2d 12, 17 (quoting Kassube v. Dakota Logging, 2005 SD 102, ¶ 25, 705 NW2d 461, 465). The Commission's findings of fact are reviewed under the clearly erroneous standard, and questions of law are reviewed de novo. Indep. Trust Co., LLC v. SD State Banking Comm'n, 2005 SD 52, ¶ 5, 696 NW2d 539, 541 (citations omitted). "[T]he question is not whether there is any evidence to support contrary findings, but

whether the Commission's findings are clearly erroneous." *Id.* ¶ 8, 696 NW2d at 542.[1]

## ANALYSIS AND DECISION

[¶11.]     An application to relocate a main office bank in South Dakota is governed by SDCL 51A-3-9. SDCL 51A-3-9 was amended in 2008,[2] however, the pre-amended version of the statute governs this case. It provided:

> Within ninety days of the receipt of the application required in § 51A-3-7, unless the commission orders that a longer time is necessary, the director shall investigate and make a report of the following:
>
> (1)     The character, reputation and financial standing of the organizers or incorporators and their motives in seeking to organize the proposed state bank;
>
> (2)     The character, financial responsibility, business experience and standing in the community of the prospective stockholders and of those proposed as directors of the bank;
>
> (3)     The need in the community where the bank would be located for banking or banking and trust facilities, or additional banking or banking and trust facilities as the case may be;

---

1.     As provided by SDCL 1-26-36, "[t]he court shall give great weight to the findings made and inferences drawn by an agency on questions of fact." Those findings are to be reviewed as of the date of the administrative hearing, not under current market conditions. It is not the Court's function to determine what the Commission would have done during today's economic difficulties.

2.     In 2008, the South Dakota legislature enacted an amendment to SDCL 51A-3-9 which eliminated, among others, the factors of "need in the community" and "ability of the community to support the proposed bank." 2008 SDSessL ch 252, §12. However, the amendment was not made retroactive and the pre-amended version of the statute governs this appeal.

(4) The ability of the community to support the proposed bank, giving consideration to:

    (a) The competition offered by existing banks;

    (b) The banking history of the community;

    (c) The opportunities for profitable employment of bank funds as indicated by the average demand for credit, the number of potential depositors, the volume of bank transactions, and the business and industries of the community, with particular regard for their stability, diversification and size; and

    (d) If the bank is to exercise trust powers, the opportunities for profitable employment of fiduciary services;

(5) Such other facts and circumstances bearing on the proposed bank and its relation to the community as in the opinion of the director or the commission may be relevant;

(6) The adequacy of the capital structure of the proposed bank in relation to the amount of the anticipated business of the bank and the safety of prospective depositors.

The director shall submit such report, together with all other pertinent information in his possession, to the commission for its consideration pursuant to § 51A-3-11.

"While the adequacy of existing facilities must be considered, the mere fact that existing facilities are adequate does not mean that justification for another bank may not exist." Application of American State Bank, Pierre, 254 NW2d 151, 153 (SD 1977) (citation omitted).

#24911

[¶12.]     First National challenges the factual findings of the Commission with respect to subsection (3) and subsection (4) of SDCL 51A-3-9, specifically the "need in the community" factor and the "ability of the community to support the proposed bank" factor.  However, we find that the Commission's findings are not clearly erroneous.  There was evidence in support of a factual finding that a need exists in Ft. Pierre for the proposed main office bank and that Ft. Pierre has the ability to support the bank.  Dakota Prairie already has an existing customer base in the Ft. Pierre area.  Population in the primary and secondary service areas has increased steadily since 1999.  The banking environment in the primary and secondary service areas has also grown steadily.  The deposits in service areas have increased from $298 million in 1999 to $495 million in 2006.

[¶13.]     The City of Ft. Pierre has invested approximately $2 million per year since 1999 to improve the infrastructure of Ft. Pierre.  As a result of those improvements, the number of buildable lots has increased significantly, and Ft. Pierre has experience growth in both residential and commercial construction.  There are several new residential real estate developments in the north area of Ft. Pierre which have experienced growth since 1999.  One development, Marion's Garden, has grown from approximately 15 homes in 2000 to almost 70 homes in 2007.

[¶14.]     Since 2000, Ft. Pierre has added between 80,000 and 100,000 square feet of commercial space.  The development of the Teton Island Business Park is a sign of significant economic development.  Several new businesses have opened in this high traffic area located at the junction of SD Highways 34 and 1806 and US

Highways 14 and 83. The proposed Dakota Prairie facility is to be located on a lot in Teton Island.

[¶15.] Evidence presented at the hearing also came through expert testimony offered by both Dakota Prairie and First National. First National's expert, Gregory Stutes, testified that there is no need in Ft. Pierre for another banking institution. Dakota Prairie's expert, Dean Coddington, concluded that moving Dakota Prairie's main bank to Ft. Pierre is economically feasible and will serve the public need. Coddington described the economic base of Ft. Pierre as diversified and experiencing consistent and steady growth since 1999. The Commission found Stutes to be a less credible witness on the subjects of need, competitiveness of the banking environment, and the ability of the community to support the addition of Dakota Prairie and found Coddington, who has conducted more than 100 studies regarding feasibility of a new bank in a proposed location, to be a more credible witness. The Commission was entitled to make this credibility finding.

[¶16.] The dissent relies heavily upon *Valley State Bank of Canton v. Farmers State Bank of Canton*, 87 SD 614, 213 NW2d 459 (1973). In that case, the Court used the standard of review that the Banking Commission's ruling must be supported by substantial evidence. *Id.* at 465. That standard of review has since been changed to a clearly erroneous standard. *See* Sopko v. C & R Transfer Co., Inc., 1998 SD 8, ¶¶ 6-8, 575 NW2d 225, 228-29.

[¶17.] The dissent also relies on *Valley State Bank of Canton* in arguing that Pierre's close proximity to Ft. Pierre should not justify granting Dakota Prairie's application. However, in *Valley State Bank of Canton*, the Court was relying on an

older version of the statute. In 1988, the legislature modified the earlier provision regarding need found at SDCL 51-3-7 (later re-codified at SDCL 51-17-15) by omitting the italicized portion of the following: "(4) The need in the community where the bank would be located for banking or banking and trust facilities, or additional banking or banking and trust facilities as the case may be, *giving particular consideration to the adequacy of existing bank and trust facilities in the community*[.]" *See* 1988 SDSessL ch 377, § 65 (emphasis added). Evidence was presented that Pierre and Hughes County would be located within the bank's secondary service area. The Commission properly gave some weight to that evidence in its findings, which findings are not clearly erroneous.

[¶18.] The legislature has given the Commission "a great deal of discretion in deciding factual questions because the commissioners are individuals with specialized knowledge of the banking and trust industries whose judgment and insight in these specialized fields facilitate the admittance and overall regulation of these industries." Application of Dorsey & Whitney Trust Co., 2001 SD 35, ¶ 9, 623 NW2d 468, 472 (citations omitted). "This does not mean that the Commission's discretion is absolute. 'It must base its actions on factual determinations limited to the factors enumerated in the statute.'" *Indep. Trust Co.*, 2005 SD 52, ¶ 7, 696 NW2d at 542 (quoting *Dorsey & Whitney Trust Co.*, 2001 SD 35, ¶ 9, 623 NW2d at 472) (internal citations omitted). A review of the record indicates that the Commission considered all of the statutory factors in making its decision. The Commission's decision is neither clearly erroneous nor an abuse of discretion.

[¶19.] Affirmed.

[¶20.]    KONENKAMP, Justice, concurs.

[¶21.]    MEIERHENRY, Justice, concurs specially.

[¶22.]    GILBERTSON, Chief Justice, and SABERS, Retired Justice, dissent.

[¶23.]    TUCKER, Circuit Judge, for ZINTER, Justice, disqualified.

MEIERHENRY, Justice (concurring specially).

[¶24.]    I agree with the majority to affirm the Commission because of our standard of review and the weight we give to the Commission's determinations. The statute requires that we "give great weight to the findings made and inferences drawn by an agency on questions of fact." SDCL 1-26-36. Here, the intervenor challenges the Commission's findings as to "need in the community" and "ability of the community to support the proposed bank." Majority opinion, ¶12. In order to reverse, we have to conclude that the Commission's findings on those factors were "clearly erroneous in light of the entire evidence in the record." SDCL 1-26-36(5). Interestingly, the legislature's 2008 amended version of the statute no longer includes the two factors at issue here.

[¶25.]    Most of the evidence before the Commission involved facts not in dispute, such as population data, business and housing growth, character, reputation and financial standing of the stockholder and directors of applicant bank, customers currently served in the area, and other economic indicators. The expert witnesses disagreed concerning the two challenged factors – need and community's ability to support another bank. As to those factors, the Commission accepted the opinion of one expert over the other and entered the following finding:

> Intervenor's expert . . . was a less credible witness on the
> subjects of need, competitiveness of the current banking

> environment, and the ability of the community to support the
> Applicant than was Applicant's expert witness.

The wording of the finding suggests that the applicant's expert was more convincing and his testimony given more weight than the intervenor's expert.

[¶26.]     The record does not display an overwhelming case for another bank in the Pierre/Ft. Pierre community. The dissent clearly points out how minimal the evidence of economic and population growth in the area was. The projected growth reflected an optimism that may or may not be realized. Based on the evidence, this is a very close case. Had the evidence projected the subsequent economic downturn, one wonders if the Commission would have made the same decision. However, we can only review the evidence and data as it existed at the time and as presented to the Commission.

[¶27.]     The role of the courts is not merely to rubber stamp a Commission's decision. However, neither can we retry the case and substitute our judgment. We have to rely on the expertise of the members of the Commission, who are supposedly chosen for their business acumen and knowledge of community banking needs.

[¶28.]     The lack of population growth certainly gives pause. Nevertheless, I cannot agree that this Court should tell the Commission which factors take precedent or should be given more weight over other factors. The legislature established the factors the Commission is to consider. Population is not cited in the statute as a factor. Here it was presented in relationship to the community need factor. Likewise, there was no evidence in the record of an industry standard for population to bank ratio. The evidence showed that some communities in South Dakota had smaller population to bank ratios than the contemplated ratio in this

case. For example, the evidence shows that the communities of Arlington, Bowdle, Castlewood, Harrisburg, Highmore, Murdo, Onida, and Viborg each have two banks that serve fewer than 500 people per bank. In light of the evidence, the Commission's findings on need and community ability to support the bank are not clearly erroneous and the Commission's decision should be affirmed.

SABERS, Retired Justice (dissenting).

[¶29.] The majority opinion concludes that the Commission's factual findings regarding sections (3) and (4) of SDCL 51A-3-9[3] are not clearly erroneous. I disagree. In light of all the evidence in the record, I am left with a definite and firm conviction that a mistake has been committed. *See* Indep. Trust Co., LLC v. S.D. State Banking Comm'n, 2005 SD 52, ¶5, 696 NW2d 539, 541. Therefore, I dissent.

[¶30.] Specifically, SDCL 51A-3-9(3) requires the Commission to investigate and make a report concerning the "need in the community" for the proposed bank, and SDCL 51A-3-9(4) requires the same regarding the "ability of the community to support the proposed bank." In pertinent part, the Commission made the following findings:

> XXII.
>
> There is currently a need in the community in and around Fort Pierre, South Dakota for Applicant's proposed main office bank. A need in the community exists to better serve the banking needs of Applicant's existing customers in the Fort Pierre/Pierre area, and to serve the existing and future banking needs of residents of the Fort Pierre/Pierre area. The Fort Pierre/Pierre area is regarded as a single banking market for the purposes of this Application.

---

3. This statute was amended in 2008. It is undisputed that the previous version of the statute applies to this case. Any reference to the statute throughout this dissent is in reference to the older version.

\* \* \*

## XXV.

There is substantial credible evidence that the area in and around Fort Pierre/Pierre has the ability to support the proposed relocation of Applicant's main banking office and charter, giving consideration to the competition offered by existing banks, the banking history of the community and opportunities for profitable employment of bank funds.

[¶31.] A review of the hearing transcript reveals, however, that these findings are clearly erroneous in light of the evidence presented. Our case law instructs that there must be some indication in the record of the economic factors supporting the need for and the ability to support additional banks including a showing of "potential depositors, the volume of transactions, the business and industrial activity of the area, or growth sufficient to warrant the issuance of an additional charter." Valley State Bank of Canton v. Farmers State Bank of Canton, 87 SD 614, 627, 213 NW2d 459, 467 (SD 1973). When analyzing the need of and the ability to support an additional bank, population trend is undoubtedly an important concept to consider in determining whether an application should be granted. Common sense dictates that in order for a bank to be successful and secure, it needs customers.

[¶32.] Dakota Prairie Bank filed an application in 1998 to establish a branch bank in Fort Pierre. This application was withdrawn after the Commission heard evidence and the parties submitted post-hearing briefs, but before the Commission rendered its decision. Again in 1999, Dakota Prairie filed applications to move its charter to Fort Pierre and to establish a branch bank where its charter existed. The

Commission denied the applications upon determining that there was no need for, nor could the Fort Pierre community support, an additional bank.

[¶33.] Dakota Prairie's application at issue in this case was filed in 2007. The evidence established that in 2000, the population of Fort Pierre was 1,991. At the close of 2006, the population was 2,067.[4] Therefore, Fort Pierre's population increased a mere 10.86 people per year from 2000 to 2006. Additionally, during the same time period, Stanley County's population slowly increased from 2,772 to 2,815, or for a total of 43 people, which computes to an increase of only 6.14 people per year. More unsettling, however, is that several Dakota Prairie witnesses conceded that the South Dakota Economic Development projected a *decrease* in Fort Pierre's population in 2010, predicting that it would be lower than the municipality's population in 2000. Such stagnant growth from 2000 to 2006 and a projected population decrease for 2010 can hardly be said to support findings of "need in the community" and "ability of the community to support" the proposed bank.[5]

---

4. Although there is some dispute in the record as to Fort Pierre's population in 2006, we rely on the more generous statistic.

5. Undeniably, Pierre is right across the Missouri River and its downtown area is within driving minutes of Fort Pierre. That alone should not justify granting Dakota Prairie's application, especially in light of the fact that a new branch bank was recently established in Pierre. From 2000 to 2006, Hughes County's population increased by 483 citizens. However, in 2002, Dakota State Bank's application to establish a branch bank in Pierre was granted to satisfy any resulting banking needs of the community.

   Furthermore, SDCL 51A-3-9 provides that the director of the Commission shall investigate various factors regarding "the community." Read literally that means "the community," under the facts before us, is Fort Pierre and does not include Pierre. Not only does the majority opinion expand the definition of "community" to include Pierre, but it throws in the entire Hughes County for good measure. *See supra* ¶17.

[¶34.] The Commission, the circuit court, and ultimately the majority opinion place significant weight on the fact that substantial sums of money were invested into the economic, infrastructure, and housing development in Fort Pierre. However, we cannot turn a blind eye to the critical admissions made by Dakota Prairie's witnesses, including (1) there currently were vacant stores and stops on Main Street in Fort Pierre; (2) a gas station in Fort Pierre had recently closed; (3) roughly half of the homeowners of the new homes in Fort Pierre were already residents of Pierre or Fort Pierre, rather than newcomers to the area; (4) despite the new homes being built, total school enrollment in Fort Pierre remained steady; (5) from 1996 to 2006, there was, on average, only one new job per month in the entire Stanley County; (6) certain branch banks in Pierre (i.e., US Bank, Home Federal Savings Bank, Dakota State Bank, Wells Fargo Bank, American State Bank) experienced no or insignificant growth in deposits from 2002 to 2006; (7) Dakota State Bank branched into Pierre in 2002 with approximately $2 million in pre-existing deposits; five years later, its deposits had grown by only $2 million; yet, Dakota Prairie projected that its deposits would increase from $1.2 million to $11 million within three years of establishment; (8) Dakota Prairie would not provide any services not already provided by the competition in Pierre and Fort Pierre; and (9) approximately only 3% of the total deposits in the Pierre/Fort Pierre market were held in Fort Pierre. There was also testimony that the drought beginning in 2002 negatively impacted area farming and ranching operations, which in turn affected banking practices. All of these facts demonstrate the clearly erroneous

#24911

nature of the Commission's findings that there is need for and the ability to support an additional bank in Fort Pierre.

[¶35.] The instant situation is similar to the facts presented in *Valley State Bank of Canton*, 87 SD 614, 213 NW2d 459, where the circuit court reversed the Commission's approval of the bank's application. In affirming the circuit court on appeal, this Court detailed several factors apparently overlooked by the Commission, including the closure of two businesses in Canton; three extensive crop failures; and a population decline in Canton and Lincoln County in general, except in the extreme northern region which borders Sioux Falls.[6] *Id.* at 625-26, 213 NW2d at 466. Undeniably, the standard of review utilized in *Valley State Bank of Canton* is different from the clearly erroneous standard we must abide by now; however, this higher standard does not mean this Court is required to rubber stamp the Banking Commission's decisions. Furthermore, *Valley State Bank of Canton* persuasively demonstrates that the factors weighing against a bank application being approved, such as stagnant or declining population, cannot be blatantly ignored. In light of Fort Pierre experiencing similar misfortunes as Canton had, the Commission's findings of a need in the community and the ability to support an

_____

6. The majority opinion submits that the dissent's reliance on *Valley State Bank of Canton* is misplaced because, at the time it was decided, an older version of the applicable statute was in force. The majority opinion points out that the current version of the statute does not include the following language: "giving particular consideration to the adequacy of existing bank and trust facilities in the community." While this is true, the majority opinion fails to recognize that the factors detailed above (i.e., business closures, crop failures, and population decline) directly relate to the Commission's determinations of whether there was a need for and the ability of the community to support an additional bank. These determinations are still required under the statutes applicable to this case. *See* SDCL 51A-3-9(3); SDCL 51A-3-9(4).

-16-

additional bank are clearly erroneous. Dakota Prairie's application should be similarly denied.

[¶36.] We cannot simply ignore the black and white reality of the stagnant population growth in Fort Pierre.[7] To do so, is, in effect, perhaps setting this bank up for failure. Since Dakota Prairie's previous application, there has not been sufficient change in the economy of Fort Pierre to warrant the establishment of an additional banking institution. The Commission's findings that there was a need for and the ability to support an additional bank are clearly erroneous. For these reasons, I dissent.

[¶37.] GILBERTSON, Chief Justice, joins this dissent.

---

7. In her special concurrence, Justice Meierhenry notes that certain communities have smaller population-to-bank ratios than what currently exists in Fort Pierre. *See* Special Concurrence, ¶5. That fact, however, is irrelevant. The Commission cannot, or at least should not, approve an application for an additional bank in Fort Pierre based on the number of banks in other communities, which apparently have the need for and the ability to support such banks. Instead, the Commission's determinations should only be based on evidence relating to, in pertinent part, *Fort Pierre's* need for and ability to support an additional bank.