TUCKER, Circuit Judge.
[¶ 1.] The South Dakota State Banking Commission, Department of Revenue and Regulation, Division of Banking (Commission) approved an application by Dakota Prairie Bank (Dakota Prairie) to relocate its main office to Ft. Pierre, South Dakota. The circuit court affirmed the Commission’s decision. First National Bank of Ft. Pierre (First National) appeals. We affirm.
FACTS AND PROCEDURE
[¶ 2.] Dakota Prairie is a South Dakota state chartered bank with its current place of business located in Presho, South Dakota and a branch bank in Draper, South Dakota. First National is a national bank with its current place of business in Ft. Pierre, South Dakota and has numerous branch banks in South Dakota.
[¶ 3.] Dakota Prairie applied to relocate its main office from Presho, South Dakota to Ft. Pierre, South Dakota ■ to better serve its current customers in the Ft. Pierre area and to attract new business. Notice of a public hearing on the application was published. First National intervened and objected to Dakota Prairie’s application.
[¶ 4.] The Commission is an administrative agency, under the direction and supervision of the Department of Revenue and Regulation, whose duties include reviewing, investigating and approving or disapproving applications to establish banks. See SDCL 51A-2-2 and SDCL 51A-3-9 through SDCL 51A-3-10. The Commission conducted a contested hearing in accordance with SDCL ch. 1-26, heard lay and expert testimony, and received other evidence from both Dakota Prairie and First National.
[¶ 5.] The Director’s investigation report to the Commission was introduced. The report concluded, among other things, that the proposed relocation would expand the banking services available to other area residents and would provide the opportunity for additional economic development in the Ft. Pierre community.
[¶ 6.] The Commission found that Dakota Prairie established a genuine intent to relocate its main office to Ft. Pierre and to convert its existing Presho office to a branch bank. Since Dakota Prairie had approximately $1.2 million in 114 deposit accounts and $1.6 million in loans to 36 customers in the Ft. Pierre/Pierre area, the relocation of the main office to Ft. Pierre would allow Dakota Prairie to better satisfy the needs of its existing customers in that area by providing a more convenient location. The primary service area for Dakota Prairie would be Ft. Pierre and Stanley County, and the secondary service area would be Pierre and Hughes County.
[¶ 7.] The Commission also found that there had been substantial economic development in the Ft. Pierre area since 1999. The City of Ft. Pierre has invested approximately $2 million per year on infrastructure improvements including expansion of the sewage lagoons, flood-proofing lift stations, implementing a backup generation station, and rehabilitating the wells and distribution system. Additionally, the property in the north area of Ft. Pierre is currently a more favorable location for residential development and construction than property in Pierre, which is evidenced by several new residential real estate developments in the north area of Ft. Pierre.
[¶ 8.] The Commission also found that there was a need in the community in and around Ft. Pierre for Dakota Prairie’s pro *850 posed main office bank. The Commission relied on testimony from Dakota Prairie’s expert, Dean Coddington, who found that the communities of Ft. Pierre and Pierre had the ability to support the proposed relocation. The banking environment in the primary and secondary service areas has grown steadily. The deposits in the primary and secondary service areas have increased from $298 million in 1999 to $495 million in 2006, which is an average gain of $28.1 million per year. Coddington projected that Dakota Prairie would reach a deposit level of $11 million in the primary and secondary service areas by the third year of operation.
[¶ 9.] The Commission concluded that Dakota Prairie had met the criteria established by SDCL 51A-3-9 by a preponderance of the evidence and voted 4-0 to approve Dakota Prairie’s application. The circuit court affirmed that decision. First National appeals, raising three issues:
Whether substantial rights of First National have been prejudiced because of the administrative findings, inferences, conclusions, or decisions.
Whether the Commission’s actions were arbitrary, capricious, and an abuse of discretion.
Whether the Commission abused its discretion by approving the application of Dakota Prairie.
STANDARD OF REVIEW
[¶ 10.] The standard of review of an administrative decision is governed by SDCL 1-26-36:
The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Clearly erroneous in light of the entire evidence in the record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
A court shall enter its own findings of fact and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment. The circuit court may award costs in the amount and manner specified in chapter 15-17.
“ ‘When a circuit court has reviewed an administrative agency’s decision, we review the agency’s decision unaided by any presumption that the circuit court’s decision was correct.’ ” Meligan v. Dept. of Rev. and Reg., 2006 SD 26, ¶ 13, 712 N.W.2d 12, 17 (quoting Kassube v. Dakota Logging, 2005 SD 102, ¶ 25, 705 N.W.2d 461, 465). The Commission’s findings of fact are reviewed under the clearly erroneous standard, and questions of law are reviewed de novo. Indep. Trust Co., LLC v. SD State Banking Comm’n, 2005 SD 52, ¶ 5, 696 N.W.2d 539, 541 (citations omitted). “[T]he question is not whether there is any evidence to support contrary findings, but whether the Commission’s findings are clearly erroneous.” Id. ¶ 8, 696 N.W.2d at 542.[1]
*851 ANALYSIS AND DECISION
[¶ 11.] An application to relocate a main office bank in South Dakota is governed by SDCL 51A-3-9. SDCL 51A-3-9 was amended in 2008,[2] however, the pre-amended version of the statute governs this case. It provided:
Within ninety days of the receipt of the application required in § 51A-3-7, unless the commission orders that a longer time is necessary, the director shall investigate and make a report of the following:
(1) The character, reputation and financial standing of the organizers or incorporators and their motives in seeking to organize the proposed state bank;
(2) The character, financial responsibility, business experience and standing in the community of the prospective stockholders and of those proposed as directors of the bank;
(3) The need in the community where the bank would be located for banking or banking and trust facilities, or additional banking or banking and trust facilities as the case may be;
(4) The ability of the community to support the proposed bank, giving consideration to:
(a) The competition offered by existing banks;
(b) The banking history of the community;
(c) The opportunities for profitable employment of bank funds as indicated by the average demand for credit, the number of potential depositors, the volume of bank transactions, and the business and industries of the community, with particular regard for their stability, diversification and size; and
(d) If the bank is to exercise trust powers, the opportunities for profitable employment of fiduciary services;
(5) Such other facts and circumstances bearing on the proposed bank and its relation to the community as in the opinion of the director or the commission may be relevant;
(6) The adequacy of the capital structure of the proposed bank in relation to the amount of the anticipated business of the bank and the safety of prospective depositors.
The director shall submit such report, together with all other pertinent information in his possession, to the commission for its consideration pursuant to § 51A-3-11.
“While the adequacy of existing facilities must be considered, the mere fact that existing facilities are adequate does not mean that justification for another bank may not exist.” Application of American State Bank, Pierre, 254 N.W.2d 151, 153 (S.D.1977) (citation omitted).
[¶ 12.] First National challenges the factual findings of the Commission with *852 respect to subsection (3) and subsection (4) of SDCL 51A-3-9, specifically the “need in the community” factor and the “ability of the community to support the proposed bank” factor. However, we find that the Commission’s findings are not clearly erroneous. There was evidence in support of a factual finding that a need exists in Ft. Pierre for the proposed main office bank and that Ft. Pierre has the ability to support the bank. Dakota Prairie already has an existing customer base in the Ft. Pierre area. Population in the primary and secondary service areas has increased steadily since 1999. The banking environment in the primary and secondary service areas has also grown steadily. The deposits in service areas have increased from $298 million in 1999 to $495 million in 2006.
[¶ 13.] The City of Ft. Pierre has invested approximately $2 million per year since 1999 to improve the infrastructure of Ft. Pierre. As a result of those improvements, the number of buildable lots has increased significantly, and Ft. Pierre has experience growth in both residential and commercial construction. There are several new residential real estate developments in the north area of Ft. Pierre which have experienced growth since 1999. One development, Marion’s Garden, has grown from approximately 15 homes in 2000 to almost 70 homes in 2007.
[¶ 14.] Since 2000, Ft. Pierre has added between 80,000 and 100,000 square feet of commercial space. The development of the Teton Island Business Park is a sign of significant economic development. Several new businesses have opened in this high traffic area located at the junction of SD Highways 34 and 1806 and U.S. Highways 14 and 83. The proposed Dakota Prairie facility is to be located on a lot in Teton Island.
[¶ 15.] Evidence presented at the hearing also came through expert testimony offered by both Dakota Prairie and First National. First National’s expert, Gregory Stutes, testified that there is no need in Ft. Pierre for another banking institution. Dakota Prairie’s expert, Dean Coddington, concluded that moving Dakota Prairie’s main bank to Ft. Pierre is economically feasible and will serve the public need. Coddington described the economic base of Ft. Pierre as diversified and experiencing consistent and steady growth since 1999. The Commission found Stutes to be a less credible witness on the subjects of need, competitiveness of the banking environment, and the ability of the community to support the addition of Dakota Prairie and found Coddington, who has conducted more than 100 studies regarding feasibility of a new bank in a proposed location, to be a more credible witness. The Commission was entitled to make this credibility finding.
[¶ 16.] The dissent relies heavily upon Valley State Bank of Canton v. Farmers State Bank of Canton, 87 S.D. 614, 213 N.W.2d 459 (1973). In that case, the Court used the standard of review that the Banking Commission’s ruling must be supported by substantial evidence. Id. at 465. That standard of review has since been changed to a clearly erroneous standard. See Sopko v. C & R Transfer Co., Inc., 1998 SD 8, ¶¶ 6-8, 575 N.W.2d 225, 228-29.
[¶ 17.] The dissent also relies on Valley State Bank of Canton in arguing that Pierre’s close proximity to Ft. Pierre should not justify granting Dakota Prairie’s application. However, in Valley State Bank of Canton, the Court was relying on an older version of the statute. In 1988, the legislature modified the earlier provision regarding need found at SDCL 51-3-7 (later re-codified at SDCL 51-17-15) by omitting the italicized portion of the following: “(4) The need in the community where the bank would be located for bank *853 ing or banking and trust facilities, or additional banking or banking and trust facilities as the case may be, giving particular consideration to the adequacy of existing bank and trust facilities in the community[.T See 1988 SD Sess.L. eh. 377, § 65 (emphasis added). Evidence was presented that Pierre and Hughes County would be located within the bank’s secondary service area. The Commission properly gave some weight to that evidence in its findings, which findings are not clearly erroneous.
[¶ 18.] The legislature has given the Commission “a great deal of discretion in deciding factual questions because the commissioners are individuals with specialized knowledge of the banking and trust industries whose judgment and insight in these specialized fields facilitate the admittance and overall regulation of these industries.” Application of Dorsey & Whitney Trust Co., 2001 SD 35, ¶ 9, 623 N.W.2d 468, 472 (citations omitted). “This does not mean that the Commission’s discretion is absolute. ‘It must base its actions on factual determinations limited to the factors enumerated in the statute.’ ” Indep. Trust Co., 2005 SD 52, ¶ 7, 696 N.W.2d at 542 (quoting Dorsey & Whitney Trust Co., 2001 SD 35, ¶ 9, 623 N.W.2d at 472) (internal citations omitted). A review of the record indicates that the Commission considered all of the statutory factors in making its decision. The Commission’s decision is neither clearly erroneous nor an abuse of discretion.
[¶ 19.] Affirmed.
[¶ 20.] KONENKAMP, Justice, concurs.
[¶ 21.] MEIERHENRY, Justice, concurs specially.
[¶ 22.] GILBERTSON, Chief Justice, and SABERS, Retired Justice, dissent.
[¶ 23.] TUCKER, Circuit Judge, for ZINTER, Justice, disqualified.

. As provided by SDCL 1-26-36, "[t]he court shall give great weight to the findings made and inferences drawn by an agency on questions of fact.” Those findings are to be re *851 viewed as of the date of the administrative hearing, not under current market conditions. It is not the Court's function to determine what the Commission would have done during today’s economic difficulties.

. In 2008, the South Dakota legislature enacted an amendment to SDCL 51A-3-9 which eliminated, among others, the factors of "need in the community” and "ability of the community to support the proposed bank.” 2008 SD Sess.L. ch. 252, § 12. However, the amendment was not made retroactive and the pre-amended version of the statute governs this appeal.